METALS REFINING LIMITED, BRUCE STEIN, TAX MATTERS PARTNER AND VIRGIL L. JACKSON, TAX MATTERS PARTNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; METAL REFINING LIMITED, ELAINE C. LEVY, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Metals Refining, Ltd. v. Commissioner
Docket Nos. 11432-89, 16665-90
United States Tax Court
T.C. Memo 1993-115; 1993 Tax Ct. Memo LEXIS 113; 65 T.C.M. (CCH) 2171; March 29, 1993, Filed *113 Bruce Stein and Virgil L. Jackson, pro se in docket Nos. 11432-89, 16665-90. George J. Rabil and Norman E. Bayles for M. Arthur Auslander (participating partner) in docket Nos. 11432-89, 16665-90. Ellis L. Reemer and Dennis M. Bresnan, for John J. Dwyer (participating partner) in docket Nos. 11432-89 and 16665-90. Michael S. Daiell, for petitioner Elaine C. Levy in docket No. 16665-90 and participating partner Elaine C. Levy in docket No. 11432-89. Ira B. Stechel, for participating partners James Bottari and Mario Cella in docket No. 16665-90. William S. Garofalo, Leon R. St. Lauren, and Frank A. Racaniello, for respondent. PANUTHOS
PANUTHOS
MEMORANDUM FINDINGS OF FACT AND OPINION PANUTHOS, Chief Special Trial Judge: These cases were assigned pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183 and a partial trial held with respect to certain issues. [1]
*114 Respondent issued two Notices of Final Partnership Administrative Adjustment (FPAA) with respect to partnership adjustments of Metals Refining Limited (MRL). The first FPAA, issued February 22, 1989, disallowed $ 230,000 [2] of loss claimed on the partnership return for the taxable year 1983. The second FPAA, issued on April 23, 1990, disallowed $ 1,820,000 of loss claimed by MRL for 1982. Petitioners [3] filed timely petitions for readjustment of partnership items pursuant to section 6226(a) and (b). A timely amended petition was filed in docket No. 11432-89. The petitions, among other things, claim that respondent is barred by the statute of limitations from assessing tax on partnership income for the 1982 and 1983 tax years. Petitioners argue that the returns were timely filed or at least were delivered to respondent's agents no later than July 20, 1984. If petitioners are correct, the period of limitations would have expired, at the latest, on July 20, 1987 (excluding any extensions) and the FPAA's would be time-barred. As an alternative argument, petitioners, in amendments to the respective petitions, claim that, even if the returns in issue had not been properly filed, *115 respondent is equitably estopped from denying that the alleged delivery of the returns on July 20, 1984, was effective filing to commence the running of the period of limitations. Respondent argues that the returns were not timely filed and that properly executed returns were not delivered to respondent's agents on July 20, 1984. Respondent also argues that equitable estoppel cannot be invoked by petitioners. The issues to be decided in this partial trial are: (1) Whether the periods for assessment of tax expired before the time respondent issued the FPAA's to the *116 partnership; (2) whether termination of an extension under Form 872-P, Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, bars assessment of tax for the 1982 and 1983 tax years; and (3) whether respondent is nevertheless barred from issueing the FPAA's under equitable estoppel principles. FINDINGS OF FACT Some of the facts are stipulated and are incorporated in our findings herein. At the time the respective petitiones were filed herein, petitioner Bruce Stein resided in Summit, New Jersey; petitioner Virgil L. Jackson resided in Wellington, Florida; and petitioner Elaine C. Levy resided in Brooklyn, New York. MRL is a limited partnership formed for the purpose of researching and developing, as well as manufacturing and marketing, metallurgical prototypes (iron and steel). At the time of the filing of the petitions herein, MRL's principal place of business was Freehold, New Jersey. For the taxable years 1982 and 1983, MRL was a partnership subject to the partnership procedures enacted by Congress in the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648-667, and set forth in sections 6221 through 6233. *117 [4]
The corporate general partner of MRL (until February 1986) was University Investment Research Associates, Inc. (UIRA). Wilbur Duncan (Duncan) and Beatrice Spinelli (Spinelli) were each 50 percent shareholders of UIRA. Duncan was the president and chief executive officer of UIRA and Spinelli was the secretary/treasurer. Although Duncan possessed the official title as chief executive officer, many of the decisions concerning MRL were made pursuant to the advice of Philip Kaftol (Kaftol), husband of the above-mentioned Spinelli. As a result of Duncan's declining health, Spinelli was the acting chief executive officer of UIRA from December 1984 until approximately June 1986. After February 1986, the corporate general partner of MRL was University Management and Investment Associates, Inc. (UMIA). Kaftol held himself out as the president of UMIA. [5] Kaftol *118 was also the owner of Ferrous Metal Research Products (FMRP) which was a contractor purportedly hired by MRL for research and development purposes. Respondent's investigation of MRL began with an internal referral from the Internal Revenue Service (IRS) Manhattan District office to the IRS Newark District office in January 1984. The referral indicated that MRL was a potential abusive tax shelter. No returns were attached to the referral. [6]
*119 On July 11, 1984, Revenue Agents Frederick Naimoli and James Rone of the Newark District office held a meeting with the then certified public accountant for MRL, Philip Genovese (Genovese). [7] The meeting took place at Genovese's office with both agents in attendance for the duration of the day. The discussions concerned the operation of MRL and its 1982 and 1983 partnership tax returns. As of that date, the IRS was not in possession of an executed tax return for either of the years in issue. Genovese gave the agents unsigned copies of the 1982 and 1983 tax returns at the July 11, 1984, meeting. He prepared the returns on January 27, 1983, and January 28, 1984, respectively. Genovese's *120 practice was to prepare and sign (as preparer) the original returns and deliver them to his clients who bore the responsibility of executing the returns and filing them with the IRS. Genovese generally retained copies of the returns in his files. The retained copies normally did not contain any signatures. A subsequent meeting was held at Genovese's office on July 20, 1984. Agent Rone was present during the entire meeting which lasted approximately 4 hours. Kaftol was also present. Agent Naimoli was in attendance for a short time. Duncan was also in attendance for part of the meeting. A power of attorney form was signed by Duncan during this meeting on behalf of Genovese. At the conclusion of the July 20, 1984, meeting, Agent Rone departed with unsigned copies of the 1982 and 1983 tax returns and the signed power of attorney executed by Duncan. Agent Rone maintained an activity sheet (as required by IRS procedures) with respect to actions taken in these matters. The activity sheet is normally kept with the IRS administrative file of a particular taxpayer. As of the date of trial, Agent Rone's activity sheet with respect to MRL was lost or misplaced. The examination of *121 MRL was reassigned to Revenue Agent William Koegel on April 1, 1985. When Agent Koegel received the IRS administrative file of MRL, it contained unexecuted copies of the 1982 and 1983 returns. On April 2, 1985 Agent Koegel made a request of the appropriate IRS office that the original returns be sent to him. A month later, Agent Koegel received a response indicating that no original returns were on file with the IRS. In May 1985, Agent Koegel made another request for the original returns and soon thereafter requested a computer transcript of the 1982 and 1983 tax accounts. The record does not reflect the responses to these requests. On January 14, 1986, Agent Koegel sent Kaftol an information document request. The request indicated that, as of that date, the IRS had no record of the filing of the 1982 and 1983 returns. Attached to the request were unsigned copies of the returns enclosed for the general partner's signature. At the same time, Agent Koegel sent Kaftol a letter seeking an extension of the limitations period for assessment. Attached to the letter was a Form 872-P, Consent To Extend Time To Assess Tax Attributable to Items of a Partnership (hereinafter 872-P). *122 The record does not indicate whether Kaftol received these documents. Agent Koegel then sent an 872-P addressed to MRL. The 872-P was signed by Spinelli on February 14, 1986, in her position as chief executive officer of UIRA. The 872-P reflected that the period of limitations for the 1982 and 1983 tax years was extended until June 30, 1987. The 872-P was executed by a representative of the IRS on March 4, 1986. On February 24, 1986, the IRS, Brookhaven Service Center, Holtsville, New York, received an unexecuted 1983 income tax return for MRL. The return was designated as a "corrected return" and contains the signature of a preparer. The service center, in an attempt to treat this as an "amended return", sent MRL a letter on April 29, 1986, indicating that the return was incomplete. The letter indicated that the return lacked a signature and requested completion of the return. A declaration was signed by Spinelli on May 30, 1986, indicating that the signor attested to the accuracy of the previously submitted return. The declaration was received by the Brookhaven Service Center on June 4, 1986. In October 1986, the IRS mailed to MRL a request for the original 1983 tax *123 return in order to process the "corrected return" as an "amended return". MRL did not provide the IRS with an original return. On December 11, 1986, IRS agents proceeded to file the 1983 "corrected return" as an "original return". The IRS deemed February 24, 1986, as the date of filing the 1983 return. As of the date of trial, IRS records do not reflect the filing of a properly executed 1982 tax return. The MRL examination was reassigned to Revenue Agent Scott Howell in May 1987. He was responsible for the matter until February 1988, when Revenue Agent Gerald Barnard was assigned the matter. Upon receipt of the files, Agent Barnard performed a search to ascertain whether the returns had been filed. The search indicated that a return had been filed for the 1983 tax year, but no return had been filed for the 1982 tax year. Agent Barnard took the copy of the unsigned 1982 return located in the IRS MRL files and, with some alterations, delivered the return to the Newark District Examination Division in March 15, 1988, as a "substitute for return". [8] The return was then forwarded to the Brookhaven Service Center on or about March 18, 1988. In March 1988, Agent Barnard initiated *124 the procedures for an examination to commence for MRL's 1982 and 1983 tax years. This was approved that same month by J.J. Jennings, District Director at the Newark District office. On November 28, 1988, a second 872-P was signed by Kaftol, in his purported position as president of UMIA. The 872-P reflected that the period of limitations for the 1983 tax year was extended until June 30, 1989. OPINION 1. Statute of Limitations
In an attempt *125 to invalidate the FPAA's, petitioners claim that the period of limitations had expired and that respondent is therefore barred from issuing the FPAA's. Section 6229(a) sets out the applicable period of limitations as follows: (a) General Rule. -- Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of-- (1) the date on which the partnership return for such taxable year was filed, or (2) the last day for filing such return for such year (determined without regard to extension).
Section 6229(b) allows the period of limitations to be extended as follows: (1) In general. -- The period described in subsection (a) (including an extension period under this subsection) may be extended-- (A) with respect to any partner, by an agreement entered into by the Secretary and such partner, and (B) with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner (or any other person authorized by the partnership *126 in writing to enter into such an agreement), before the expiration of such period.
The expiration of the period of limitations on assessment is an affirmative defense raised in this case by petitioners. The party raising the issue has the burden of proof. Rule 142(a); United States v. Gurley, 415 F.2d 144, 147 (5th Cir. 1969); Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227, 240 (1990). "To establish this defense, the taxpayer must make a prima facie case establishing the filing of the partnership return, the expiration of the statutory period, and receipt or mailing of the notice after the running of the period." Id. at 240-241 (citing Miami Purchasing Service Corp. v. Commissioner, 76 T.C. 818, 823 (1981); Robinson v. Commissioner, 57 T.C. 735, 737 (1972)). Where this showing is made, the burden of going forward with the evidence shifts to respondent, who must introduce evidence to show that the bar of the statute of limitations does not apply. Amesbury Apartments, Ltd. v. Commissioner, supra at 241 *127 (citing Adler v. Commissioner, 85 T.C. 535, 540 (1985)). Where respondent makes such a showing, the burden of going forward shifts back to the party pleading the affirmative defense to show that the alleged exception to the expiration of the period is invalid or otherwise inapplicable. Id. The burden of ultimate persuasion however, never shifts from the party who pleads the bar of the statute of limitations. Id.
In support of their claim, petitioners raise two alternative arguments. The first is that the returns were timely filed. The second argument is that properly executed returns were delivered to respondent's agents at the July 20, 1984, meeting. According to petitioners, this delivery constitutes proper filing to commence the running of the period of limitations. a. Timely filed returns
According to the allegations in the respective petitions, the returns in issue were timely filed. See sec. 6072(a). If petitioners are correct, the period of limitations (excluding any extensions) would have expired on April 15, 1986, for the 1982 tax year and April 15, 1987, for the 1983 tax year, therefore invalidating the FPAA's issued. *128 Petitioners have the burden of proving that the returns were timely filed. Rule 142(a); Espinoza v. Commissioner, 78 T.C. 412, 421 (1982) (citing United States v. Gurley, 415 F.2d 144, 147 (5th Cir. 1969); Young v. Commissioner, 208 F.2d 795 (4th Cir. 1953), affg. a Memorandum Opinion of this Court dated Apr. 10, 1953; BJR Corp. v. Commissioner, 67 T.C. 111, 119 (1976)). The facts of this case do not support petitioners' contention of timely filed returns. With the exception of the allegations made in the respective petitions, this argument has not been addressed by petitioners in any of their supporting papers. As a result of petitioners' failure to pursue this argument, we decide the disputed issue against petitioners by reason of their failure to satisfy their burden of proof. See Calcutt v. Commissioner, 84 T.C. 716 (1985); Remuzzi v. Commissioner, T.C. Memo. 1988-8, affd. without published opinion 867 F.2d 609 (4th Cir. 1989). b. Delivery of returns to agents
*129 As an alternative argument, petitioners claim that the returns were satisfactorily filed at the July 20, 1984 meeting between Agent Rone and representatives of MRL. Petitioners claim that Agent Rone received properly executed returns for the 1982 and 1983 tax years which had been signed by Duncan during the meeting and that this constituted proper filing. If petitioners are correct in asserting that the returns were filed on July 20, 1984, the period of limitations (excluding any extensions) would have expired on July 20, 1987, and respondent would have been barred from issuing the FPAA's after that date. We reiterate that petitioners have the burden of proving that the returns were properly filed. We note that the IRS records do not reflect any history of these returns being filed (prior to 1986) despite numerous searches by various representatives of the IRS. "Where there is a question as to whether the return was filed, the records of the IRS are an item of evidence." Espinoza v. Commissioner, 78 T.C. 412, 421 (1982) (citing Parker v. Commissioner, 365 F.2d 792, 800 (8th Cir. 1966)), affg. on this issue T.C. Memo. 1965-77; *130 BJR Corp. v. Commissioner, 67 T.C. 111, 119 (1976)). "Moreover, the absence of an entry on such record is evidence of the nonoccurrence of an event ordinarily recorded." Espinoza v. Commissioner, supra at 421-422 (citing Fed. R. Evid. 803(10)); United States v. Lanier, 578 F.2d 1246, 1255 (8th Cir. 1978); United States v. Johnson, 577 F.2d 1304, 1312 (5th Cir. 1978); United States v. Harris, 551 F.2d 621, 622 (5th Cir. 1977); United States v. Zeidman, 540 F.2d 314 (7th Cir. 1976)). The evidence offered by petitioners to satisfy their burden of proof is incomplete and at times contradictory, straining credulity. We take note of the fact that Kaftol failed to testify. Throughout the record there are indications that Kaftol has been involved, whether overtly or in a behind-the-scenes role, in the affairs of MRL. He was present at the July 20, 1984, meeting in which Duncan allegedly signed the returns in issue. He also had substantial contact with Genovese and with the IRS agents throughout the *131 examination period. It would appear that Kaftol could have enlightened this Court on the facts at issue in this case. However, petitioners did not offer him as a witness. We conclude that his testimony would be unfavorable to petitioners. See McKay v. Commissioner, 89 T.C. 1063, 1069 (1987), affd. 886 F.2d 1237 (9th Cir. 1989) (citing Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947)). The testimony that petitioners did introduce for support of their position was vague and unreliable, often times contradicting the statements petitioners made in their supporting papers. For example, petitioners insisted that Duncan signed both returns at the July 20, 1984, meeting and that the returns were delivered to the agents at the meeting. However, Duncan repeatedly testified that he had only signed one return (1983) in 1984 and that this took place at a meeting allegedly held several months later. Meanwhile, Kaftol, in a letter to Genovese dated September 15, 1986, stated that Duncan admitted to never signing any of MRL's *132 returns. Genovese was unable to state affirmatively that he saw Duncan sign the returns, despite being in the office with him. When asked if he observed Duncan signing the returns, Genovese responded "I believe I did, but you know, again, it's a long time ago. Do I physically remember him taking a pen in his hand and signing his name, I can't honestly say I did". Petitioners argue that certain work papers, including the activity sheets of the agents, were missing from the IRS' MRL file. In particular, petitioners claim that the activity sheet of Agent Rone would have documented the receipt of the signed returns. In this regard, the IRS's handling of this case was not a model of efficiency. The transfer of the MRL examination to different IRS agents no doubt created confusion, delay, and a lack of continuity throughout the examination process. However, the loss of the activity sheet is not sufficient to prove that executed returns were filed. Petitioners simply failed to establish that executed returns were delivered to the IRS agents at the July 20, 1984, meeting. Even if the IRS agents received properly executed returns, delivery to such agents does not necessarily constitute *133 proper filing. "For a taxpayer to secure the benefit of the [statute of] limitation, there must be 'meticulous compliance by the taxpayer with all named conditions.'" Winnett v. Commissioner, 96 T.C. 802, 807-808 (1991) (quoting Lucas v. Pilliod Lumber Co., 281 U.S. 245, 249 (1930)). Section 6091, through its regulations, provides that the return of partnership income shall be filed in accordance with section 1.6031-1, Income Tax Regs.Sec. 1.6091-1(b)(1), Income Tax Regs. According to section 1.6031-1(e)(1), Income Tax Regs., the returns of a partnership doing business in the United States shall be filed with the District Director for the internal revenue district in which the partnership has its principal office or principal place of business within the United States. Sec. 1.6031-1(e)(1)(i), Income Tax Regs. Partnership returns that are hand carried shall be filed with the District Director (or with any person assigned the administrative supervision of an area, zone, or local office constituting a permanent post of duty within the internal revenue district of such director) in accordance with section 1.6031-1(e)(1)(i), *134 Income Tax Regs.Sec. 1.0631-1(e)(1)(ii), Income Tax Regs.[9]
Petitioners' alleged delivery of the returns to the IRS agents does not comply with the requirements noted above. In particular, Agents Rone and Naimoli do not hold the requisite position within the IRS to accept these returns for filing purposes. See Espinoza v. Commissioner, 78 T.C. 412 (1982). In Espinoza v. Commissioner, a taxpayer delivered to IRS agents at a meeting conducted with the taxpayer, his accountant, and the agents, four documents stamped "amended return" for several prior tax years. An agent signed a letter of *135 receipt at this meeting and promised the taxpayer he would process the returns. The returns, despite being stamped as received by the audit division, were not forwarded to the local service center. The result was that the IRS treated the returns as never being filed for purposes of the statute of limitations. The taxpayer filed a motion for summary judgment seeking to establish that the statute of limitations barred the assessment and collection of the deficiencies. The Court denied the taxpayer's motion, concluding, among other things, that the taxpayer's delivery of the returns to the agent did not constitute proper filing. See also O'Bryan Bros., Inc. v. Commissioner, 127 F.2d 645 (6th Cir. 1942), affg. 42 B.T.A. 18 (1940); W. H. Hill Co. v. Commissioner, 64 F.2d 506 (6th Cir. 1933), affg. 23 B.T.A. 605 (1931). 2. The Extension Agreements (872-Ps)
Petitioners raise two arguments concerning both 872-Ps (executed in 1986 and 1988, respectively). The first argument asserts that the initial 872-P required respondent to assess taxes prior to the expiration *136 of the extension date (June 30, 1987), or seek a further extension of the limitations period by timely obtaining a new 872-P. Petitioners claim that respondent missed the assessment deadline and is therefore barred from proceeding based upon contract principles. An 872-P is the means by which a partnership may agree to extend the period of limitations with respect to all partners. See sec. 6229(b); sec. 301.6229(b)-1T, Temporary Income Tax Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987). Although this consent itself does not create a contract, the taxpayer and Commissioner are bound to honor the terms of the "agreement" based upon contract principles. See Schulman v. Commissioner, 93 T.C. 623, 639 (1989) (applying contract principles to Form 872-A); Woods v. Commissioner, 92 T.C. 776 (1989) (applying contract principles to form 872-A); Kronish v. Commissioner, 90 T.C. 684 (1988) (applying contract principles to Form 872). These terms, however, do not include a shortening of the limitations period provided by statute. Liles v. Commissioner, T.C. Memo. 1987-16. *137 Section 6229(a) provides that the IRS must assess tax within 3 years of the date the return was filed. Section 6229(c)(3) provides that tax may be assessed by the IRS "at any time" when no return is filed. In this case, the 1983 tax return was considered filed on February 24, 1986, and, therefore, respondent had until February 24, 1989, to assess the tax. For the 1982 tax year, representatives of MRL failed to file a tax return; therefore, respondent has an indefinite period in which to assess. Neither section 6229 nor the regulations promulgated thereunder authorize restriction of the period of limitations to a time shorter than that provided by Congress. [10]
3. Equitable Estoppel
As a final argument, petitioners claim that even if the 1982 and 1983 tax returns were not properly filed with the IRS, respondent is estopped from denying that the alleged delivery *138 of the returns on July 20, 1984, was effective filing to commence the running of the period of limitations. Petitioners' argument is based upon alleged representations made by respondent's agents that the returns had been satisfactorily filed. "Equitable estoppel is a judicial doctrine that 'precludes a party from denying his own acts or representations which induced another to act to his detriment'." Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992) (quoting Graff v. Commissioner, 74 T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982)). "Estoppel is applied against the Commissioner 'with utmost caution and restraint.'" Hofstetter v. Commissioner, supra (quoting Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977)). The following elements must be shown to invoke equitable estoppel against a particular party: (1) The existence of a false representation or wrongful misleading silence by the party; (2) ignorance of the true facts on the part of the other party; (3) reasonable reliance by the other party on the false *139 representation or wrongful misleading silence; (4) error in a statement of facts and not in an opinion or statement of law; and (5) a resulting detriment to the party relying on the false statement or misleading silence. Kronish v. Commissioner, 90 T.C. 684, 695 (1988); Estate of Emerson v. Commissioner, 67 T.C. 612, 617-620 (1977). The burden of proof is on the party claiming estoppel against the Government. Rule 142(a); Hofstetter v. Commissioner, supra at 701. The facts in this case do not establish many of the elements necessary for estoppel. In particular, petitioners failed to provide evidence of conduct by the IRS agents which constitutes a representation, whether it be a false misrepresentation or a wrongful, misleading silence. Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971); Kronish v. Commissioner, supra.According to petitioners, the actions of the IRS agents "lulled" representatives of MRL into believing that the delivery of the returns was satisfactory filing. Petitioners claim that approximately *140 one month after the July, 20, 1984, meeting, Genovese called Agent Naimoli to ascertain the status of the audit. Genovese testified that Agent Naimoli acknowledged that the IRS was "satisfied with the way the return was filed, the books and records and so forth, but there was a question as to whether the deduction for the petitioners would be allowed in full or whether it would be done on a cash basis as to how and when they put the money in". Spinelli also testified that pursuant to a conversation she had with Agent Naimoli (at the time she took over operations at UIRA), Agent Naimoli stated that "everything was fine. There was nothing I had to do". The questions they are derived from do not indicate with reasonable certainty that these statements were given in response to questions concerning whether returns were satisfactorily filed. It is not clear from this record whether MRL's representatives specifically inquired as to whether the returns had been filed properly. In any event, representatives of MRL were in the best position to provide an accurate account of the execution and filing of the returns. In a further attempt to establish a representation, petitioners claim *141 that Agent Koegel failed to notify representatives of MRL that his searches reflected no returns having been filed, constituting a misleading silence. Instead, Agent Koegel sent MRL an 872-P extending the period of limitations for the 1982 and 1983 tax years. First, there appears to be some question as to whether Agent Koegel did attempt to contact any of MRL's representatives. Petitioners claim the MRL representatives received no notification about the results of Agent Koegel's inquiries. However, Agent Koegel testified that in June 1985 he called Genovese, who was not available at the time, and left a message. According to Agent Koegel, he was unaware that Genovese had been discharged by MRL in early July 1985. [11] Agent Koegel also testified that he advised Kaftol sometime in January 1986 that no returns appeared in the IRS records. We accept the testimony of Agent Koegel. However, even if we were to disregard the testimony, we would not find his "silence" wrongful or misleading. *142 Petitioners also claim that sending the 872-P was a representation which reaffirmed the representatives of MRL that the returns had been accepted. Although it does appear somewhat inconsistent to seek an extension of the period of limitations in a situation where no return has been filed, Agent Koegel offered a plausible response. According to Agent Koegel, he sent the 872-P to protect the interests of the IRS in the event that the returns had in fact been filed. Although the IRS records appeared to indicate that no returns had been filed, the agents at the July 1984 meetings (as well as the agents subsequently involved) were given no indication by representatives of MRL that the returns had not been filed. The confusion may be attributable to the inconsistent information received from MRL representatives, as well as the many transfers of this case within the IRS. We do not consider the actions of the IRS to be sufficient acts of misrepresentation or misleading silence for purposes of equitable estoppel. The cases relied upon by petitioners are distinguishable because they involve clear acts of misrepresentation. See, e.g., Belton v. Commissioner, 562 F. Supp. 30 (D.D.C. 1982); *143 Tonkonogy v. United States, 417 F.Supp. 78 (S.D.N.Y. 1976). However, assuming arguendo we find such actions to constitute a misrepresentation or misleading silence, petitioners failed to satisfy many of the remaining elements necessary for estoppel. For example, equitable estoppel applies only if one party misrepresents facts to the other party. The IRS agents' alleged acceptance of the returns as constituting satisfactory filing could at most be a misrepresentation of an issue of law not an issue of fact. Furthermore, petitioners also failed to prove that representatives of MRL were ignorant of the truth. MRL representatives' alleged reliance on the IRS agents' representations would have resulted from a misunderstanding of the legal effect of the representations, not on ignorance of the true facts. Respondent is not estopped by a taxpayer's mistake as to the legal effect of respondent's representations. Service Bolt & Nut Co. Trust v. Commissioner, 78 T.C. 812, 820-822 (1982), affd. 724 F.2d 519 (6th Cir. 1983). Since petitioners have failed to satisfy many of the elements necessary, *144 the doctrine of equitable estoppel may not be relied upon. 4. Conclusion
We hold that the FPAA's were issued within the period of limitations. The FPAA for the 1983 tax year was issued within 3 years of the February 24, 1986, filing date. Sec. 6229(a). Further, since no return was filed for the 1982 tax year, respondent may assess and collect a deficiency "at any time". Sec. 6229(c)(3). Therefore, the FPAA for the 1982 tax year was timely issued. An appropriate order will be issued. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. These cases are consolidated for purposes of the opinion herein.↩
2. As an alternative position, respondent determined a disallowance of $ 171,380 (based upon an amount-at-risk argument).↩
3. Petitioners in docket No. 11432-89 are Bruce Stein and Virgil L. Jackson (tax matters partners). Petitioner in docket No. 16665-90 is Elaine C. Levy (a partner other than the tax matter partner). For purposes of this opinion, unless otherwise indicated, the use of the term "petitioners" refers to Stein, Jackson, and Levy.↩
4. While the exact date of formation of MRL was not made part of this record, none of the parties question the applicability of the TEFRA partnership provisions.↩
5. Respondent offered into evidence letters, written on the letterhead of MRL and UMIA, of which most were signed by Kaftol as "president" or "operating head" of UMIA. The letters were offered for the purpose of showing Kaftol's relationship with MRL and UMIA. Petitioners did not question the authenticity of the documents, but objected based on hearsay. The documents are not hearsay since we admit them into evidence for the limited purpose of reflecting Kaftol's purported relationship with MRL and UMIA. Fed. R. Evid. 801(c)↩.
6. The agents in the Manhattan District office apparently responded to an advertisement of MRL placed in a local newspaper. The agents felt the operation was suspicious and decided to investigate. The preliminary findings were forwarded to the Newark District office for further investigation.↩
7. Genovese was dismissed by MRL as its accountant in July 1985 and was replaced by John Daus (Daus), an accountant with the accounting firm of The Charles Lawson Company. However, it was not until Sept. 1988 that Genovese's power of attorney for MRL was formally rescinded. Daus was given the power of attorney after that time.↩
8. The Internal Revenue Manual instructs the agent to place the taxpayer's name, address, and identification number on a prescribed return form and place zeroes in the columns or leave them blank. 2 Audit, Internal Revenue Manual (CCH), sec. 4562.4, at 8175-11. In this instance, the agent utilized the unexecuted copy of the 1982 return; thus, the "substitute for return" reflected calculations relating to income and deductions. Agent Barnard testified that while he made some alterations to the "substitute for return", the calculations reflected thereon were not changed.↩
9. There is a proposed amendment to this regulation which would eliminate language relating to "hand carried returns" and "delivery to the district director" and would require that all partnership returns for taxable years beginning after Sept. 3, 1982, be filed with the service center. Sec. 1.6031-1(e), Proposed Income Tax Regs., 51 Fed Reg. 3079↩ (Jan. 23, 1986).
10. Based on this holding, we need not respond to petitioners' argument that the second Form 872-P was invalid because it was not timely executed.↩
11. It should be recalled that Genovese's power of attorney was not revoked until Sept. 1988.↩