T.C. Memo. 2011-116

UNITED STATES TAX COURT

MARTIN R. DINGMAN, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17453-09L.                    Filed June 1, 2011.

Martin R. Dingman, pro se.

Ann L. Darnold, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  Respondent issued a Notice of Determination
Concerning Collection Action(s) Under Section 6320 and/or 6330[1]
(notice of determination) to collect by levy additions to tax

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code), as amended, and all Rule
references are to the Tax Court Rules of Practice and Procedure.
Monetary amounts have been rounded to the nearest dollar.

under section 6651(f) for fraudulent failure to file Federal income tax returns for 1996-2000. Pursuant to section 6330(d), petitioner timely filed a petition seeking review of respondent's determination to proceed with the proposed levy. The issue for decision is whether respondent may proceed with the proposed levy. However, because petitioner contends that respondent did not timely assess the section 6651(f) addition to tax for any of the years at issue, we must examine whether and when petitioner filed his delinquent returns for 1996-2000.

FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulated facts into our findings by this reference. Petitioner resided in Missouri when he filed his petition.

Petitioner failed to timely file his 1996-2000 Federal income tax returns. At some point before 2003, the Criminal Investigation Division (CID) of the Internal Revenue Service (IRS) initiated a criminal tax investigation against petitioner. Petitioner retained attorneys Gerald M. Handley (Mr. Handley) and Mark A. Thornhill (Mr. Thornhill) to represent him in connection with the investigation, which apparently focused on petitioner's failure to file returns.

During the criminal investigation a paid return preparer, Connie Henderson of RSM McGladrey, Inc., prepared Federal income tax returns for petitioner using a filing status of "Married

filing separate" for each of the years 1996-2000, which she signed on October 29, 2002. Petitioner signed the returns and on November 8, 2002, mailed the returns and checks to pay the Federal income tax liabilities reported on the 1996 and 1997 returns to Mr. Handley, who received the package on November 13, 2002.

Petitioner's counsel had regular meetings with the CID during the criminal investigation. Sometime before February 19, 2003, petitioner's counsel delivered a package containing petitioner's 1996-2000 Federal income tax returns and checks to pay petitioner's 1996 and 1997 tax liabilities as shown on the 1996 and 1997 returns to the office of the CID, the IRS office that was handling the investigation of petitioner.

On February 19, 2003, respondent posted payments of $31,878 and $86,617 to petitioner's tax accounts for 1996 and 1997, respectively. The posted amounts equaled the amounts of the checks delivered to the CID to pay the tax reported due on petitioner's 1996 and 1997 returns. The February 19, 2003, entries on the transcripts of petitioner's 1996 and 1997 tax accounts show code 640, "Advance Payment of Deficiency", and confirm that the IRS had received and deposited petitioner's checks and credited petitioner's accounts for the payments.[2]

_____

[2]The transcripts of petitioner's 1996-2000 tax accounts also show entries with code 977, "Amended Return Filed", that are

(continued...)

On June 9, 2003, respondent posted payments of $94,456, $31,795, and $61,795 to petitioner's tax accounts for 1998, 1999, and 2000, respectively.  The payments for 1998-2000, which petitioner delivered to the IRS sometime between February 19 and June 9, 2003, are identified with code 640, "Advance Payment of Deficiency Cash Bond Credit".  These payments equal the amounts of tax due that petitioner reported on his 1998-2000 returns.[3]

On February 28, 2006, respondent assessed additions to tax under section 6651(f) for fraudulent failure to file returns for

---

[2](...continued)
dated Mar. 17, 2003.  Lastly, the transcripts show an entry for each year with code 560, "Assessment Statute Expir. Date Extended to 03-12-2006".

[3]The certified transcripts of petitioner's tax accounts for 1996-2000 that were introduced by respondent and admitted into evidence contain no entries reflecting that the delinquent returns were filed, that the tax liabilities shown on the delinquent returns were assessed, or that the payments reflected above were credited against any assessments.  The certified transcripts also do not contain any entries showing that notices of deficiency were mailed to petitioner for 1996-2000.  The uncertified internal transcripts of petitioner's tax accounts for 1996-2000 that were introduced by petitioner and admitted into evidence appear to contain more information, but respondent does not explain which codes in those transcripts reflect the filing of the returns, the assessments, or the crediting of the payments against assessments.

1996-2000.[4]  Respondent concedes that he failed to provide petitioner with notice and demand of the assessments of additions to tax as required by section 6303(a).[5]

On a date that does not appear in the record but which was not later than July 12, 2007, petitioner was charged in a criminal information with two counts of willfully failing to file tax returns for 2000 and 2001 under section 7203.  On July 12, 2007, petitioner executed a plea agreement pursuant to rule 11 of the Federal Rules of Criminal Procedure.  The plea agreement

---

[4]Respondent assessed the additions to tax as follows:

| Year | Amount |
|------|--------|
| 1996 | $22,400 |
| 1997 | 60,901 |
| 1998 | 65,436 |
| 1999 | 21,995 |
| 2000 | 43,374 |

[5]Each certified transcript of petitioner's tax accounts for 1996-2000 bears the following notation:  "NO NOTICES TO THE TAXPAYER CI IS WORKING THIS FRAUD CASE IRC 6651 F".  We infer from the entries in the certified transcripts that the CID had assumed control over the processing of petitioner's case during the pendency of the criminal investigation.  We also infer that the CID instructed IRS personnel not to issue otherwise required notices that would have informed petitioner that the sec. 6651(f) addition to tax had been assessed for 1996-2000.  See infra pp. 33-36.  No one from respondent's CID testified at trial or provided information during the sec. 6330 hearing.  In petitioner's words:  "When my most recent attorney, Mr. Thornhill, tried to work with the criminal investigation division, he was told very abruptly that they were very sorry but they could not get involved" with the Appeals case.  The parties stipulated that because respondent failed to send petitioner notice and demand of the assessments of additions to tax under sec. 6651(f), statutory interest had not begun to accrue.

recited that petitioner would plead guilty to the two-count information and that by entering into the plea agreement, petitioner admitted that he knowingly committed the offenses and was, in fact, guilty of the offenses. The plea agreement also stated in pertinent part as follows:

> The parties agree that the defendant has paid federal taxes and [sic] totaling $343,983 for tax years 1996 through 2001, and the defendant will receive proper credit for these payments. The parties further agree to the assessment of tax in the amounts not to exceed those reported on the tax returns filed by the defendant for tax years 1996 through 2001. [Emphasis added.]

Petitioner entered a guilty plea in accordance with the plea agreement, which was accepted by the U.S. District Court for the Western District of Missouri, Southern Division, and he was sentenced in January 2008.

On December 10, 2008, respondent sent petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice) for 1996-2000. On or about January 2, 2009, petitioner timely mailed a Form 12153, Request for a Collection Due Process or Equivalent Hearing. On the Form 12153 petitioner stated that he disagreed with the proposed levy because he owed no tax or penalty. Attached to the Form 12153 was a letter explaining petitioner's disagreement with the proposed levy.[6] Petitioner denied receiving any notices regarding taxes due.

---

[6]Mr. Thornhill wrote the letter on petitioner's behalf.

Petitioner also stated in the letter that he had paid all income taxes due for 1996-2000 and that any claim for additional taxes, penalties, and interest was barred by the statute of limitations. Petitioner also stated that respondent had used an incorrect address for him even though he had provided his new address to respondent in various documents, including the Federal income tax returns he had filed in 2003 and in later years.[7]

Petitioner's case was assigned to Settlement Officer Sheila D. Jenkins (Ms. Jenkins). On February 3, 2009, Ms. Jenkins wrote in her activity record that the case had been assigned for the assistance of an Appeals officer. Appeals Officer Maria A. Frazier (Ms. Frazier) reviewed the case and prepared a case memorandum. Ms. Frazier wrote in the memorandum that it was not clear whether petitioner had been notified of the assessments. She also stated that it was not clear whether any returns had been processed. On the basis of the entries with code 560, "Assessment Statute Expir. Date Extended to 03-12-2006", on petitioner's accounts, Ms. Frazier determined that petitioner had signed an extension agreement[8] extending the period of

---

[7]Although respondent sent the final notice to petitioner's old address, the postman handed it to petitioner.

[8]Throughout the administrative proceeding, at trial, and in filings with this Court, the parties have referred to the form that petitioner allegedly signed as a period of limitations extension, an extension, or a waiver. The forms generally used to obtain an individual taxpayer's consent to extend the period
(continued...)

limitations to March 12, 2006. She stated that "Since an extension was signed there had to be a statute of limitation that was triggered with either a filing of the return or an agreement of some kind" and concluded that the assessments were timely.

On March 30, 2009, Ms. Jenkins sent petitioner a letter scheduling a telephone hearing for April 17, 2009. Ms. Jenkins advised petitioner that if he wanted to propose alternative collection methods, he should submit a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and/or Form 433-B, Collection Information Statement for Businesses, and supporting documents, including proof of 2008 estimated tax payments, and he should file all Federal income tax returns due. Ms. Jenkins also stated that respondent had investigated the assessments of the additions to tax[9] and determined that they were timely. Ms. Jenkins commented as follows: "The IRS does in fact, usually give persons notice of an assessment being made; however, the assessment can be made

---

[8](...continued)
of limitations on assessment are Form 872, Consent to Extend the Time to Assess Tax, and Form 872-A, Special Consent to Extend the Time to Assess Tax. We refer to the form as an extension agreement in this opinion in accordance with the term used by respondent's employees in processing petitioner's case.

[9]During the sec. 6330 proceeding and in filings with this Court, the parties have referred to the sec. 6651(f) addition to tax as a penalty.

without notification as long as it is within the statute of limitations."

On April 1, 2009, Mr. Thornhill and Ms. Jenkins spoke on the telephone. Mr. Thornhill reiterated that petitioner did not recall executing an extension agreement. Mr. Thornhill requested a copy of all extension agreement documents that respondent believed petitioner had executed and a copy of any letter that respondent had allegedly sent petitioner regarding the assessments. Mr. Thornhill and Ms. Jenkins agreed to postpone the section 6330 telephone hearing until May 1, 2009.

The telephone hearing scheduled for May 1, 2009, was held as scheduled. During the hearing Mr. Thornhill reiterated petitioner's position that the assessments of the additions to tax under section 6651(f) were time barred and that petitioner had not received any notices from respondent regarding the unpaid additions to tax. Ms. Jenkins advised Mr. Thornhill that petitioner's accounts had been referred to the Examination Division to determine the correctness of the assessments. She stated that in the process of that investigation respondent had determined that the assessments were timely because petitioner had extended the period of limitations on collection and assessment to March 12, 2006. Ms. Jenkins informed Mr. Thornhill that respondent had attempted without success to find the extension agreement that she maintained petitioner had signed.

Ms. Jenkins advised Mr. Thornhill that the case would be reviewed further before a final determination.

On May 13, 2009, Mr. Thornhill and Ms. Jenkins held a followup telephone conversation regarding the existence of any extension agreement. On May 20, 2009, Ms. Jenkins and Mr. Thornhill held another telephone conference. Ms. Jenkins stated that the case had been reviewed by an Appeals officer and the assessed additions to tax would not be abated. Mr. Thornhill asked to speak with the Appeals team manager, Jean Fuentes (Ms. Fuentes).

On June 1, 2009, Ms. Fuentes conducted a conference with Mr. Thornhill. Ms. Fuentes explained that the assessments dated March 12, 2006, were timely because petitioner had filed his returns on March 17, 2003.[10] She also stated that because petitioner had failed to provide documents requested in the March 30, 2009, letter, no collection alternatives could be considered.

On June 23, 2009, respondent sent petitioner the notice of determination. In the notice of determination respondent stated that "Based upon the best available information, the requirements of various applicable law and administrative procedures have been met." Respondent stated that petitioner had failed to present a

---

[10]Certified transcripts in the record reflect that the sec. 6651(f) additions to tax for the years at issue were assessed on Feb. 28, 2006, not Mar. 12, 2006, as stated by Ms. Fuentes and as later stated in the notice of determination. We find that the assessment date was Feb. 28, 2006.

viable collection alternative and that the decision to proceed with collection by levy was appropriate. In the attachment to the notice of determination respondent concluded that petitioner had extended the period of limitations to March 12, 2006. The Appeals Office also determined that the February 28, 2006, assessments were timely because petitioner had filed his returns on March 17, 2003.

Petitioner did not execute an extension agreement or any other document that extended the applicable period of limitations. Petitioner filed his returns for 1996-2000 no later than February 19, 2003, when the checks that were delivered with the 1996-2000 returns to the CID were credited to petitioner's 1996 and 1997 accounts.

OPINION

I. Statutory Framework

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after notice and demand for payment is made. Section 6330(a) provides that no levy may be made on any property or rights to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made. If the person requests a hearing, a hearing shall be held before an impartial officer or employee of the IRS Office of Appeals. Sec.

6330(b)(1), (3).  At the hearing the person may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives.  Sec. 6330(c)(2)(A).  A taxpayer may also contest the existence or amount of the underlying tax liability if he did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following the hearing, the Appeals Office must determine whether the proposed levy action may proceed.  The Appeals Office is required to take into consideration:  (1) Verification presented by the Secretary that the requirements of applicable law and administrative procedure have been met, (2) relevant issues raised by the taxpayer, and (3) whether the proposed levy action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns regarding the intrusiveness of the proposed levy action.  Sec. 6330(c)(3).

Section 6330(d)(1) grants this Court jurisdiction to review the determination made by the Appeals Office in connection with the section 6330 hearing.  Where the underlying liability is properly at issue, we review the taxpayer's liability de novo. See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  We review all other determinations for abuse of discretion.

Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 182. An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

In his Form 12153 and during the hearing, petitioner questioned whether respondent had made the assessments within the applicable limitations period. The assertion by a taxpayer that the period of limitations has expired constitutes a challenge to the underlying tax liability. Hoffman v. Commissioner, 119 T.C. 140, 145 (2002). The underlying liabilities are properly at issue because respondent did not issue notices of deficiency[11] and petitioner had no opportunity to dispute the underlying tax liabilities. See sec. 6330(c)(2)(B). Accordingly, we review de novo the question of whether respondent made the assessments

---

[11]Sec. 6665(b) provides, inter alia, that an addition to tax under sec. 6651 is treated as a tax for purposes of the deficiency procedures only to the extent that the addition to tax is attributable to a deficiency as defined in sec. 6211. Petitioner does not suggest that the additions to tax under sec. 6651(f) in this case are attributable to a deficiency, and on the basis of our finding that petitioner filed delinquent returns for 1996-2000 and made the described tax payments, we agree they are not. Respondent concedes that petitioner filed delinquent returns for 1996-2000 and disputes only the date when the returns were filed. The amounts shown as taxes by a taxpayer on filed returns do not constitute deficiencies within the meaning of sec. 6211(a). See Wilson v. Commissioner, 118 T.C. 537, 540 (2002) (holding that under sec. 6665(b) the additions to tax under sec. 6651(f) were not attributable to deficiencies when those additions to tax were computed by reference to taxes shown by the taxpayer on his delinquently filed returns).

within the applicable period of limitations.  See Sego v. Commissioner, supra at 609-610.

Generally, any reference in the Code to tax includes additions to tax, additional amounts, and penalties.  See sec. 6665(b).  Accordingly, we shall apply the limitations provisions of section 6501 to decide whether the section 6651(f) additions to tax were timely assessed.  Section 6501(a) generally provides that the amount of any tax imposed by the Code shall be assessed within 3 years after the return was filed.  In Bennett v. Commissioner, 30 T.C. 114, 123-124 (1958), we held that the limitations period begins to run when the taxpayer files a delinquent nonfraudulent return after fraudulently failing to file a timely return.

The bar of the period of limitations is an affirmative defense, and the party raising the defense must specifically plead it and prove it.  Rules 39, 142(a); Hoffman v. Commissioner, supra at 146.  Petitioner pleaded the defense by claiming that the limitations period had expired before respondent assessed the additions to tax.  To prove the defense successfully, the taxpayer must establish (1) the filing date of the returns and (2) that the Commissioner assessed the relevant amounts after the expiration of the 3-year period for assessment. See Hoffman v. Commissioner, supra at 146; Mecom v. Commissioner, 101 T.C. 374, 382 (1993), affd. without published opinion 40 F.3d

385 (5th Cir. 1994). If the taxpayer establishes a prima facie case that the applicable period of limitations has expired and that the Commissioner's assessment is barred, the burden of going forward with evidence shifts to the Commissioner. See Hoffman v. Commissioner, supra at 146; Mecom v. Commissioner, supra at 382. The Commissioner then must show that the assessment is not barred by the period of limitations under section 6501(a). Hoffman v. Commissioner, supra at 146; Mecom v. Commissioner, supra at 382. If the Commissioner makes such a showing, the burden of going forward with the evidence shifts back to the taxpayer. Hoffman v. Commissioner, supra at 146; Mecom v. Commissioner, supra at 383. Notwithstanding the shifting of the burden of going forward, the burden of ultimate persuasion remains with the party who pleads the bar of the period of limitations. Hoffman v. Commissioner, supra at 146-147.

## II. The Parties' Arguments

The parties do not disagree about the assessment date, February 28, 2006. Instead, they disagree about the filing date of petitioner's delinquent 1996-2000 returns. Petitioner asserts that he filed his 1996-2000 returns no later than February 19, 2003, when the checks that were delivered with the returns were credited to his 1996 and 1997 accounts. He points to respondent's records; namely, uncertified transcripts of his income tax accounts that were admitted into evidence without

objection, which confirm that respondent posted petitioner's payments of his reported 1996-97 liabilities on February 19, 2003. Petitioner testified at trial that his counsel delivered the checks to pay petitioner's Federal income tax liabilities for 1996 and 1997[12] with original signed returns for each of the years 1996-2000 to the CID. Petitioner contends that this means that by February 19, 2003, at the latest, respondent had received the payments for 1996 and 1997 and the 1996-2000 returns and had processed the payments. Petitioner denies signing any extension agreements extending the period of limitations on assessment or any other documents that would have kept the 3-year limitations period open beyond February 19, 2006, and we accept his testimony on this point as credible.[13]

Respondent's position during the section 6330 hearing was different from that asserted during trial and on brief. During the section 6330 hearing, respondent contended that the assessments were timely because petitioner executed an extension agreement extending the applicable period of limitations on assessment before the limitations period had expired as shown on

---

[12]Respondent's records show that petitioner paid his 1998-2000 Federal income tax liabilities in June 2003. Petitioner testified that he submitted the payments for 1998-2000 later in the spring because he did not have the money available to make the payments until then.

[13]Respondent's counsel agrees that petitioner did not execute an extension agreement.

IRS transcripts and because petitioner had filed the returns on March 17, 2003. At trial and on brief, however, respondent abandoned his argument that petitioner had executed an extension agreement extending the period of limitations on assessment and relied only on his contention that petitioner filed his returns on March 17, 2003, thereby making the assessment timely. Respondent relies on the transcripts of petitioner's 1996-2000 tax accounts showing entries with code 977, "Amended Return Filed", that are dated March 17, 2003, to support his contention.[14] Respondent also relies on transcript entries showing that the February 19, 2003, payments were posted as "Advance Payment of Deficiency" rather than payments accompanying filed returns.[15] Respondent therefore claims that the Appeals Office correctly determined the assessments were timely.

After reviewing the record, including petitioner's testimony, which we find credible, and respondent's transcript entries regarding the characterization and filing date of the

---

[14]Petitioner responds in part by contending that the entries showing that amended returns were filed were in error. Petitioner contends that he filed original returns, not amended returns.

[15]Respondent also points to the so-called TXMODA transcripts showing that the receipt of payments for 1996 and 1997 was posted in cycle 20031508, whereas the entries documenting the submission of the 1996-2000 returns were posted in cycle 20031708. We interpret respondent's argument to be that because the TXMODA transcripts show the returns were processed later than the payments, we should find that the returns and the payments were submitted on different dates. We decline to make such a finding.

returns, which we do not find credible, we find that petitioner's counsel delivered a package containing petitioner's fully executed original returns for 1996-2000 and checks to pay the 1996 and 1997 liabilities shown on the 1996 and 1997 returns to the CID no later than February 19, 2003. That finding, however, is not sufficient, standing alone, to permit us to conclude that the returns were properly filed. We must delve deeper.

Respondent contends that simply delivering returns to an IRS office is not sufficient to constitute proper filing. Respondent relies upon section 6091 and related regulations to support his argument. In anticipation that we might find that petitioner's counsel delivered the returns and checks to the CID office handling petitioner's criminal investigation, respondent also relies on a line of cases holding that the delivery of a return to the wrong IRS representative or office is not a return filing and does not cause the applicable period of limitations on assessment to begin to run. Respondent explains that if the returns were not delivered to the correct IRS office and to an IRS employee with authority to accept returns for filing on or before February 19, 2003, the 3-year limitations period did not start to run on that date. Respondent also argues that delivery of returns to the CID was not a proper filing because special agents of the CID were not specifically authorized to accept returns for filing.

III. Applicable Law Governing Return Filing in 2003

As discussed above, section 6501(a) provides that the amount of any tax imposed by the Code shall be assessed within 3 years after the return was filed.  Section 6501 does not define the word "filed", but under pertinent caselaw the general rule is that a return is filed when it is received.[16]  United States v. Lombardo, 241 U.S. 73, 76 (1916); Trout v. Commissioner, 131 T.C. 239, 246 (2008).  Generally, a limitations period "runs against the United States only when they assent and upon the conditions prescribed."  Lucas v. Pilliod Lumber Co., 281 U.S. 245, 249 (1930).  For a taxpayer to secure the benefit of a limitations period bar, there must be "'meticulous compliance by the taxpayer with all named conditions.'"  Winnett v. Commissioner, 96 T.C. 802, 807-808 (1991) (quoting Lucas v. Pilliod Lumber Co., supra at 249).  One such requirement is that a return be filed at the designated place of filing returns.  See id. at 808.

Section 6091(a) provides that "When not otherwise provided for by this title, the Secretary shall by regulations prescribe the place for the filing of any return".  Section 6091(b)(1)(A) provides generally that a person other than a corporation must

---

[16]Exceptions to the general rule do not apply here.  See, e.g., sec. 7502(e)(1).

make a return to the Secretary[17] (i) in the internal revenue district of the taxpayer's place of residence or (ii) at a service center serving such internal revenue district, as the Secretary may prescribe by regulations. Section 6091(b)(4) provides that, notwithstanding the above, a return to which section 6091(b)(1) would apply but for subsection (b)(4) that is made to the Secretary by hand carrying shall, under regulations prescribed by the Secretary, be made to the internal revenue district referred to in section 6091(b)(1)(A)(i).

As in effect for 2003, section 1.6091-1, Income Tax Regs., provides that with an exception not applicable here, an income tax return required under the Code or regulations shall be filed at the place for filing specified in the Code or, if no place is specified, the return shall be filed at the place prescribed by regulations. Section 1.6091-2(a)(1), Income Tax Regs., provides that income tax returns of individuals shall be filed with the district director for the internal revenue district of the taxpayer's residence.[18] Section 1.6091-2(d)(1), Income Tax

---

[17]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B). The term "delegate" means any officer, employee, or agency of the Department of the Treasury duly authorized by the Secretary of the Treasury, directly or indirectly, by one or more redelegations of authority, to perform the relevant function. Sec. 7701(a)(12)(A).

[18]However, notwithstanding sec. 6091(b)(1), if instructions applicable to income tax returns provide that the returns be
(continued...)

Regs., provides that returns of individual taxpayers that are filed by hand carrying "shall be filed with the district director (or with any person assigned the administrative supervision of an area, zone or local office constituting a permanent post of duty within the internal revenue district of such director) as provided in * * * [section 1.6091-2(a), Income Tax Regs.]." See also sec. 301.6091-1(b)(1), Proced. & Admin. Regs. A return is considered to be hand carried if it is brought to the district director by the person required to file the return or other document, or by his agent, such as the taxpayer's attorney or a member of the taxpayer's family. See sec. 301.6091-1(c), Proced. & Admin. Regs.

Although section 6091 and the regulations thereunder as in effect for 2003 authorized returns to be filed with the district director or his delegate, that direction had been rendered obsolete with the restructuring of the IRS pursuant to the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 1001(a), 112 Stat. 689. That act required the Commissioner to develop and implement a plan to reorganize the IRS. Id. The new organizational structure became effective on October 1, 2000. See I.R.S. News Release IR-2000-67 (Sept.

---

[18](...continued)
filed with a service center, the returns must be filed in accordance with those instructions. See sec. 1.6091-2(c), Income Tax Regs.

27, 2000).  As a result of the reorganization, the IRS replaced the national, regional, and district structure with organizational units serving particular industries and groups of taxpayers with similar needs.  See id.  Despite these comprehensive organizational changes, in 2003 regulations under section 6091 continued to refer to officials whose positions had been eliminated and to offices that had been eliminated as a result of the reorganization, leaving taxpayers with little or no effective regulatory guidance regarding important requirements affecting their return filing obligations.[19]

In early 2003 the Commissioner issued Notice 2003-19, 2003-1 C.B. 703 (2003 notice), advising taxpayers of the proper addresses for filing documents with the IRS, including "with respect to offices or officials that no longer exist as part of the reorganization."  In the 2003 notice the Commissioner acknowledged that the Office of District Director was an outdated place of filing.

According to the 2003 notice, to file returns under section 6091, "Returns should be mailed to the address specified in the

---

[19]IRS Deleg. Order 1-23 (formerly IRS Deleg. Order 193, Rev. 6), Internal Revenue Manual (IRM) pt. 1.2.40.22 (Nov. 8, 2000), titled "Authorization to Perform Functions of the Commissioner" provides that the authority to take actions previously delegated to district directors is delegated to Assistant Deputy Commissioners, Division Commissioners, Chiefs, and Directors, Submission Processing Field, Compliance Services Field, and Accounts Management Field.

form or instructions."[20]  Notice 2003-19, 2003-1 C.B. 707.  The
2003 notice also stated that "Hand-carried returns should be
filed with the local Service office."  Id.  Section 6 of the 2003
notice titled "Obtaining Information for Location of Service
Offices Where Elections, Statements, Returns, and Other Documents
Can Be Filed By Personal Delivery" provides that "Taxpayers
required to file elections, statements, returns, and other
documents who are permitted to file by personal delivery with a
Service office may obtain information regarding the location of
the nearest Service office by calling the Service's toll-free
number".  Id. at 711.  The 2003 notice was effective for
documents filed on or after April 7, 2003.  See id.

It was not until September 16, 2004, that the Department of
the Treasury amended section 1.6091-2, Income Tax Regs., to
reflect the changes in the IRS organizational structure and to
explain how they affected the filing of returns.  See T.D. 9156,
2004-2 C.B. 669.  According to the preamble, "these final
regulations replace obsolete references to IRS organizations and

---

[20]As part of the overall reorganization, starting in 2000
the IRS reorganized its service center operations.  I.R.S. News
Release IR-2000-61 (Sept. 1, 2000).  In the light of these
changes in the service center operations that spanned more than 2
years, in January 2003 the IRS issued a news release reminding
taxpayers that they would be sending their 2002 returns to
service centers different from those used the previous year.
I.R.S. News Release IR-2003-10 (Jan. 27, 2003).  The news release
explained where the returns should be mailed, depending on the
taxpayer's residence, see id., but it contained no instructions
for taxpayers who preferred to file returns by hand delivery.

titles with updated references that are sufficiently flexible to take into account future changes to IRS structure or operations." Id. at 670. The preamble provided that the amended regulations specify the place of filing hand-carried[21] returns in a manner consistent with the 2003 notice. See id. at 669. Section 1.6091-2(a)(1), Income Tax Regs., as amended by T.D. 9156, 2004-2 C.B. at 670, provides that individual income tax returns must be filed with "any person assigned the responsibility to receive returns at the local Internal Revenue Service office that serves the legal residence * * * of the person required to make the return." Section 1.6091-2(d)(1), Income Tax Regs., as amended by T.D. 9156, 2004-2 C.B. at 670, addresses returns filed by hand carrying and provides that "Returns of persons other than corporations which are filed by hand carrying shall be filed with any person assigned the responsibility to receive hand-carried returns in the local Internal Revenue Service office".

Respondent contends that because the 2004 amendments to section 1.6091-2(d)(1), Income Tax Regs., made no substantive

_____

[21]Although the preamble states that the amendment concerns the filing of hand-carried returns, see T.D. 9156, 2004-2 C.B. 669, the amendment also affected sec. 1.6091-2(a)(1), Income Tax Regs., which contains general provisions on return filing. Compare sec. 1.6091-2(a)(1), Income Tax Regs. (stating that the returns shall be filed with a district director), with sec. 1.6091-2(a)(1), Income Tax Regs., as amended by T.D. 9156, 2004-2 C.B. 669 (stating that the returns shall be filed with any person assigned responsibility to receive returns at the local IRS office).

changes to the taxpayer's ability to file a return by hand carrying it to a local IRS office as stated in the preamble, see T.D. 9156, 2004-2 C.B. at 669, it is appropriate to treat amended section 1.6091-2, Income Tax Regs., as the relevant authority with respect to the issue of whether petitioner's counsel delivered the returns to the appropriate IRS employee. We disagree. There is no provision in T.D. 9156, 2004-2 C.B. at 669, that gives amended section 1.6091-2, Income Tax Regs., retroactive effect, and respondent has cited no authority for the proposition that amended section 1.6091-2, Income Tax Regs., controls or should control the filing of an individual income tax return in 2003.

To summarize, in the first 3 months of 2003, the only relevant guidance to a taxpayer regarding the filing of his return was the guidance provided by section 6091, obsolete regulations, and any instructions for specific returns. The 2003 notice, which the IRS issued in early 2003 to temporarily fill the information gap created by the reorganization, was effective for documents filed after April 7, 2003, and did not apply to returns delivered to the IRS before the effective date. The amended regulations under section 6091 were not promulgated until 2004 and did not apply to returns filed in 2003.

IV. <u>Analysis</u>

The record does not establish exactly how or when petitioner's counsel delivered the package of returns and checks to the CID.  In the normal case, such a gap in the record would dictate that the taxpayer, who has the burden of proof on the limitations issue, must lose.  This is not the normal case, however.

Although the record is not clear regarding the details of the delivery of the tax return package to the IRS, the record clearly establishes two important facts:  (1) The tax return package was delivered to the IRS no later than February 19, 2003, and (2) the package was received by an IRS office that had the authority to process its contents.  We know these facts because the income tax transcripts in the record confirm that the checks to pay petitioner's 1996 and 1997 tax liabilities as reported on petitioner's 1996 and 1997 returns were processed, deposited, and ultimately credited to petitioner's 1996 and 1997 accounts on February 19, 2003.  Although the transcripts are less clear about the processing of the returns, the transcripts also show that returns of some kind were processed on March 17, 2003, as "Amended Return Filed".  Because the only returns petitioner submitted to the IRS were his original delinquent returns, we assume for purposes of this analysis that the returns processed as amended returns were really petitioner's original returns.

Respondent did not introduce any evidence to explain the "Amended Return Filed" entries on the transcripts or the lack of any entry with respect to the original returns.

As stated earlier, petitioner has the burden of proof regarding the limitations issue and the initial burden of production. Petitioner carried his initial burden of production by introducing credible evidence that his attorney delivered a package containing his 1996-2000 original returns and checks to pay his 1996 and 1997 tax liabilities to the IRS and by introducing IRS transcripts confirming that the IRS had received the package and actually processed at least some of its contents. The earliest processing date, February 19, 2003, appearing on the transcripts gives rise to an inference that an IRS office with authority to receive and process the documents had received the returns and checks by that date. Consequently, the burden of producing evidence shifted to respondent.

Respondent called no witnesses and introduced no exhibits other than a few stipulated exhibits and certified transcripts with respect to the allegedly unpaid liabilities for each of the years 1996-2000 that are the subject of this proceeding. The transcripts contain substantially the same entries. One entry on each of the transcripts reflects that a fraud penalty was assessed on February 28, 2006. The rest of the entries are largely uninformative and require us to guess at their meanings,

e.g., "Claim Pend", "470 In Error", and "Litigation". The certified transcripts, which do not purport to be the type of income tax transcripts that would show the history of petitioner's income tax accounts for 1996-2000, contain no indication that petitioner filed original returns for 1996-2000, that the tax reported on the returns was assessed, or that payments of the reported tax were credited to petitioner's accounts. However, each of the transcripts contains the following entry: "NO NOTICES TO THE TAXPAYER CI IS WORKING THIS FRAUD CASE IRC 6651 F".

Respondent had the obligation to produce evidence that demonstrated petitioner did not effectively file his 1996-2000 return until March 2003. Respondent did not do so. The only evidence in the record regarding the receipt and processing of the package that petitioner's counsel delivered to the IRS is the evidence gleaned from IRS transcripts. Those transcripts establish that the package was received no later than February 19, 2003, when the payments of petitioner's 1996 and 1997 tax liabilities as reported on petitioner's original returns for those years by checks included in the package were posted to petitioner's accounts.

Ordinarily, the Commissioner's failure to counter taxpayer's credible evidence would be fatal to the Commissioner's position. Respondent seeks to avoid such a result by contending that

petitioner failed to meticulously comply with the filing requirements. Respondent relies on a line of cases to support his argument. See Helvering v. Campbell, 139 F.2d 865 (4th Cir. 1944), affg. a Memorandum Opinion of this Court; O'Bryan Bros. v. Commissioner, 127 F.2d 645 (6th Cir. 1942), affg. 42 B.T.A. 18 (1940); W.H. Hill Co. v. Commissioner, 64 F.2d 506 (6th Cir. 1933), affg. 23 B.T.A. 605 (1931); Winnett v. Commissioner, 96 T.C. at 807-808; Espinoza v. Commissioner, 78 T.C. 412, 413-414 (1982); Allnutt v. Commissioner, T.C. Memo. 2002-311, affd. 523 F.3d 406 (4th Cir. 2008); Friedmann v. Commissioner, T.C. Memo. 2001-207, affd. 80 Fed. Appx. 285 (3d Cir. 2003); Green v. Commissioner, T.C. Memo. 1993-152, affd. without published opinion 33 F.3d 1378 (5th Cir. 1994); Metals Refining Ltd. v. Commissioner, T.C. Memo. 1993-115; Harrod v. Commissioner, T.C. Memo. 1961-300; Kotovic v. Commissioner, T.C. Memo. 1959-177; Kraus v. United States, 55 AFTR 2d 85-1116, at 85-1119, 85-1 USTC par. 9310, at 87,752-87,753 (E.D.N.Y. 1985); United States v. Dolmage, 166 F. Supp. 202 (D. Md. 1958); Levert v. United States, No. 94-1035 (Bankr. N.D. Ohio 1994).

Most of the cases on which respondent relies involved a situation where the taxpayer submitted returns to an IRS office and/or to an IRS employee contrary to the specific guidance set forth in section 6091 and related regulations. See, e.g., Winnett v. Commissioner, supra; Espinoza v. Commissioner, supra

at 422; Allnutt v. Commissioner, supra; Friedmann v. Commissioner, supra; Metals Refining Ltd. v. Commissioner, supra. Each of the cases involved an attempted return filing that occurred when IRS districts headed by district directors were still in place. Consequently, the regulations under section 6091 in effect before 2004 offered effective guidance regarding the filing of returns. See, e.g., Espinoza v. Commissioner, supra at 422; Allnutt v. Commissioner, supra; Metals Refining Ltd. v. Commissioner, supra; Levert v. United States, supra. Some of the cases involved attempts by taxpayers to file returns with revenue agents who were handling their cases at a time when the courts concluded that delivering returns to a revenue agent did not constitute filing of a return. See, e.g., O'Bryan Bros., Inc. v. Commissioner, supra at 647; Friedmann v. Commissioner, supra; Metals Refining Ltd. v. Commissioner, supra; Harrod v. Commissioner, supra; Kraus v. United States, 55 AFTR 2d at 85-1119, 85-1 USTC at 87,752-87,753. None of the cases respondent cites involved an attempt by the taxpayer to file executed original returns with payments, and none of the cases involved evidence that the payments made with the returns were actually processed by the IRS and credited to the taxpayer's account.

Some of the cases respondent cites address the taxpayer's intent to file a return. See, e.g., Espinoza v. Commissioner, supra at 422; Allnutt v. Commissioner, supra; Friedmann v.

Commissioner, supra.  The record supports a conclusion that petitioner clearly intended to file the returns when his counsel submitted them to the CID.  The returns were accompanied by payment of petitioner's 1996 and 1997 Federal income tax liabilities and were filed at a time when the returns could have been used against petitioner in the criminal investigation.[22]  We believe that an inference that petitioner intended to file the returns by submitting them to the CID is warranted on the record before us.

Respondent also attempts to convince us that the CID had no authority in 2003 to accept returns for filing.  Respondent, relying on some of the cases cited above, contends that special agents of the CID, like revenue agents, had not been specifically delegated authority to accept returns for filing and that therefore the delivery of the package of the returns and the checks to the CID was not a proper filing.

---

[22]Submitting returns while a criminal investigation is ongoing can have very serious and adverse consequences for the taxpayer and is not undertaken lightly.  See, e.g., Smith v. United States, 348 U.S. 147, 157-158 (1954) (prior tax returns sufficiently corroborated the taxpayer's statements as to his financial history and the opening net worth); United States v. Karsky, 610 F.2d 548 (8th Cir. 1979) (prior returns relevant to a determination of the taxpayer's state of mind for establishing willfulness which is an essential element of the crime of failure to file an income tax return under sec. 7203); Malnik v. Commissioner, T.C. Memo. 1985-467 (a criminal investigation expanded to 1963 after the taxpayer filed his 1963 return during a criminal investigation).

We cannot and need not draw such a conclusion on the facts of this case for several reasons. First, respondent did not prove that special agents had not been delegated authority to accept returns for filing in 2003. In fact, respondent did not introduce any evidence regarding the IRS employees who were authorized in 2003 to receive returns on behalf of the IRS. Second, the Commissioner has recognized in at least one instance that a specific delegation of authority to receive returns for filing is not necessary as long as a de facto delegation of authority exists. In 1999 the Commissioner's Office of Chief Counsel issued Chief Counsel Advice (CCA) 199933039 (Aug. 20, 1999). The CCA recognized a revenue officer's authority to receive delinquent returns for filing even though there was no specific delegation order permitting revenue officers to do so. See CCA 199933039 (Aug. 20, 1999). In the CCA the Office of Chief Counsel concluded that a delegation of authority may take many forms including functional statements in position descriptions. Id. Respondent did not introduce the position description of a special agent[23] or any other evidence to support his arguments.

The third reason for rejecting respondent's argument is really a corollary of the second reason and relates to the

---

[23]Respondent cites individual occupational requirements for the position of a criminal investigator for the Department of the Treasury but refers to it as a position description.

general authority of the CID over criminal investigations of taxpayers and related civil matters. As noted previously, each of the plain-English transcripts in the record contains the following notation: "NO NOTICES TO THE TAXPAYER CI IS WORKING THIS FRAUD CASE IRC 6651 F". Respondent did not introduce any evidence to explain the entries. However, the IRM as in effect in 2003 contemplated that the CID could receive delinquent returns and was entitled to instruct IRS employees regarding the processing of delinquent returns and payments. Part 9.8 of the IRM described the control function of the Fraud Detection Center (FDC), whose primary responsibilities were to identify refund fraud and provide support for the Criminal Investigation field offices. See 5 Administration, IRM (CCH), pt. 9.8.1.2.2 (Jan. 29, 2002). The IRM stated that the FDC was to notify the CID field office when an IRS campus received amended or delinquent returns for accounts under the control of the CID. See id. pt. 9.8.2.6(1) (July 29, 2002). The IRM also stated: "The FDC will process amended returns, delinquent returns, and advance payments submitted to the FDC from the CI field office for accounts under

CI control based on instructions".[24]  See id. pt. 9.8.2.6.1(1) (emphasis supplied).

We have found nothing in the Code or the regulations that would authorize the CID to prevent or delay the processing of delinquent original returns filed by a taxpayer during the pendency of a criminal tax investigation within its jurisdiction. The above-described IRM provisions, however, appear to acknowledge the ability of the CID to "control" cases under investigation and to provide "instructions" regarding the processing of delinquent returns and payments.  See, e.g., id.; id. pt. 9.8.2.6(2).  Set against this background is evidence that original returns petitioner filed were not timely processed and that the processing of the returns was inexplicably characterized in the IRS' records as the processing of amended returns.  These anomalies deserved an explanation, but none was forthcoming. Although respondent could have called a representative of the CID office that was responsible for the investigation of petitioner or other IRS employees to testify regarding the receipt and processing of petitioner's delinquent returns, respondent chose

---

[24]The general instructions for processing original delinquent returns stated that before processing those returns, the IRS' statute function had to determine whether the CID had requested the service center to control the taxpayer's account. See 6 Administration, IRM (CCH), pt. 25.6.4.4.2(6) (Oct. 1, 2001).  If so, in certain circumstances the IRS' statute function should have referred cases to CID for the processing instructions.  Id. pt. 25.6.4.4.1(7).

not to do so. Respondent's failure to introduce evidence within his control gives rise to an inference that the evidence would have been unfavorable. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

Moreover, we have held that if a taxpayer submits a return to a person who is not authorized to accept the return for filing and the return is then forwarded to the correct IRS office, the period of limitations commences when the office designated to receive the return actually receives it. See Winnett v. Commissioner, 96 T.C. at 808 (holding that for purposes of determining the beginning of the period of limitations a return is deemed filed when it is received by the "revenue office designated to receive such return"); Allnutt v. Commissioner, T.C. Memo. 2002-311 (returns deemed filed when the District Director's office stamped them received). We have found that petitioner's counsel delivered the checks along with five returns to the CID of the IRS. The certified transcripts of petitioner's tax accounts show that the checks were processed as of February 19, 2003, and we therefore infer that the checks and returns were transmitted for processing through internal IRS channels. Accordingly, we also conclude that even if the returns were considered filed only when they were received for processing (as

opposed to when they were delivered to the CID), such filing occurred on or before February 19, 2003.

For the foregoing reasons, we find that the package of tax returns and checks was received by an IRS office with authority to receive and process the contents of the package no later than February 19, 2003. We hold therefore that petitioner effectively filed his 1996-2000 returns no later than February 19, 2003. It follows then that respondent's assessments of the section 6651(f) additions to tax on February 28, 2006, were not made within the applicable 3-year period of limitations, and we so find.

Because respondent did not timely assess the section 6651(f) additions to tax for 1996-2000, respondent is barred from collecting the underlying tax liabilities at issue here. We hold therefore that petitioner does not owe the underlying tax liabilities at issue, and we do not sustain respondent's proposed collection action. In the light of this holding, we do not need to address whether the Appeals Office abused its discretion in determining to proceed with the levy.

We have considered all of the arguments raised by either party, and to the extent not discussed above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.