T.C. Memo. 2019-122

UNITED STATES TAX COURT

SEAVIEW TRADING, LLC, AGK INVESTMENTS, LLC, TAX MATTERS
PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1837-11.                    Filed September 16, 2019.

<u>Armando Gomez</u>, <u>David W. Foster</u>, and <u>Miriam Louise Fisher</u>, for
petitioner.

<u>Justin D. Scheid</u> and <u>James M. Cascino</u>, for respondent.

MEMORANDUM OPINION

RUWE, <u>Judge</u>:  This matter is before the Court on petitioner's motion for

summary judgment filed pursuant to Rule 121,[1] to which respondent objects.

_____

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules

(continued...)

[*2] Respondent issued a notice of final partnership administrative adjustment (FPAA) to AGK Investments, LLC (AGK), as tax matters partner of Seaview Trading, LLC (Seaview), on October 26, 2010.[2]  The major relevant adjustment in the FPAA was the disallowance of a $35,496,542 loss deduction allocated by Seaview to AGK and KMC Investments, LLC (KMC), for 2001.[3]  The loss resulted from Seaview's participation in a listed transaction.

In a related case, we previously held that Seaview was a partnership subject to TEFRA proceedings and that AGK is Seaview's proper tax matters partner. Seaview Trading, LLC v. Commissioner, T.C. Dkt. No. 1744-11 (Mar. 11, 2015) (granting motion to dismiss for lack of jurisdiction), aff'd, 858 F.3d 1281 (9th Cir. 2017).

After concessions by the parties, the issue we must decide is whether, for the reasons petitioner asserts in its motion for summary judgment, the

---

[1](...continued)
of Practice and Procedure, and all section references are to the Internal Revenue Code (Code) in effect for the year in issue.

[2]In petitioner's memorandum in support of the motion for summary judgment, it asserts that respondent issued the FPAA on October 27, 2010. However, the FPAA is dated October 26, 2010.

[3]The FPAA also contained an adjustment for 2003, which petitioner contested in a separate petition.  Respondent subsequently conceded the 2003 adjustment.

**[*3]** determinations in the FPAA are time barred by the limitations period under section 6229(a).[4] For the reasons discussed below, we will deny petitioner's motion.

## Background

Seaview had its principal place of business in California when it filed its petition and amended petition.

Seaview was formed as a Delaware limited liability company on November 13, 2001, and is classified as a partnership for Federal income tax purposes. During the year in issue Seaview was owned 99.15% by AGK and 0.85% by KMC. During the year in issue Robert A. Kotick was AGK's sole member, and Charles M. Kotick was KMC's sole member.[5]

---

[4]In its amended petition, petitioner challenges the validity of the FPAA and respondent's imposition of sec. 6662(a) accuracy-related penalties and sec. 6662(h) gross valuation misstatement penalties. Petitioner did not challenge any of the substantive adjustments. Therefore, those adjustments are deemed conceded. See Rule 241(d)(1)(C).

In the stipulation of settled issues, the parties stipulated that petitioner is not liable for any of the sec. 6662 penalties.

[5]Charles M. Kotick passed away in 2005.

**[\*4]** In November 2001 Seaview entered into a straddle transaction through a common trust fund. The trust fund terminated the transaction in December 2001 and allocated a $35,496,542 loss to AGK and KMC.[6]

Petitioner claims that Seaview filed a Form 1065, U.S. Return of Partnership Income, for 2001 in July 2002.[7] But on July 27, 2005, Internal Revenue Agent Jerry Johnson issued to Seaview a letter stating, among other things, that the Commissioner had never received Seaview's 2001 Form 1065. On September 23, 2005, Jeffrey Sedacca, Seaview's accountant, faxed to Agent Johnson a purported copy of Seaview's 2001 Form 1065 and a certified mail receipt purporting to show that the return was initially sent to the Commissioner on July 3, 2002.

In October 2005 the Commissioner selected Seaview's 2001 tax year for examination. On July 24, 2007, Seaview's attorney sent a purported copy of Seaview's 2001 Form 1065 to respondent's counsel. The cover letter stated that the document was a "copy of * * * [Seaview's] 2001 Form 1065".

---

[6]AGK was allocated $35,194,821, and KMC was allocated $301,721.

[7]Although petitioner alleges that Seaview filed a 2001 Form 1065 in July 2002, petitioner does not place the allegation at issue in its motion for summary judgment. But petitioner reserves the right to argue the allegation if necessary.

**[\*5]**  On October 26, 2010, more than three years after Seaview both faxed the 2001 Form 1065 to Agent Johnson and sent a copy to respondent's counsel, the Commissioner issued to petitioner an FPAA for 2001, claiming that Seaview never filed its Form 1065.  Petitioner timely filed a petition with this Court.

## Discussion

Summary judgment is designed to expedite litigation and to avoid unnecessary and expensive trials.  Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974).  Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  The burden is on the moving party to demonstrate that no genuine issue as to any material fact remains and that he is entitled to judgment as a matter of law.  FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74-75 (2001).  In deciding whether to grant summary judgment, we view the evidence in the light most favorable to the nonmoving party.  Bond v. Commissioner, 100 T.C. 32, 36 (1993).  However, the nonmoving party is required "to go beyond the pleadings and by * * * [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex Corp. v.

[*6] Catrett, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c) and (e)); see also Rauenhorst v. Commissioner, 119 T.C. 157, 175 (2002); FPL Grp., Inc. & Subs. v. Commissioner, 115 T.C. 554, 559 (2000). Summary adjudication is appropriate in this matter because the parties agree on all material facts and the only disputes we must resolve are matters of law.

The issue we must decide is whether, as argued in petitioner's motion, respondent issued the FPAA outside the period of limitations on assessment. Generally, the period for assessing any income tax attributable to partnership items (or affected items) for a partnership taxable year will not expire before the later of a date which is three years after (1) the partnership files its return for the taxable year in question or (2) the last day for filing such return for such year (without extensions). Sec. 6229(a). However, the Commissioner may assess tax attributable to a partnership or affected item at any time if the partnership does not file a return. Sec. 6229(c)(3).

Petitioner contends that Seaview filed its 2001 Form 1065 when Mr. Sedacca faxed a copy of the return to Agent Johnson on September 23, 2005, and again when its attorney sent a copy to respondent's counsel on July 24, 2007. Respondent contends that Seaview did not file a return because it failed to submit the return at the proper place for filing. Therefore, the limitations period never

**[\*7]** began to run. Furthermore, respondent claims that neither the copy of the 2001 Form 1065 Mr. Sedacca faxed in 2005 nor the copy Seaview's attorney mailed in 2007 qualifies as a return.

If petitioner is correct that Seaview filed the purported return on September 23, 2005, and again on July 24, 2007, then the FPAA was issued after the expiration of the period of limitations on assessment. Thus, the success of petitioner's motion hinges on whether Seaview filed its return when it faxed a copy to Agent Johnson in 2005 or mailed a copy to respondent's counsel in 2007. Additionally, the copies of the 2001 Form 1065 that Seaview submitted must actually constitute returns.

## I. Whether Seaview Filed Returns

Generally, a limitations period "runs against the United States only when they assent and upon the conditions prescribed." Lucas v. Pilliod Lumber Co., 281 U.S. 245, 249 (1930). For a taxpayer to secure the benefit of a limitations period bar, there must be "meticulous compliance by the taxpayer with all named conditions." Winnett v. Commissioner, 96 T.C. 802, 807-808 (1991) (quoting Lucas v. Pilliod Lumber Co., 281 U.S. at 249). One such requirement is that a return be filed at the designated place of filing returns. See id. at 808. However, if a taxpayer submits a return to the wrong place but the return is later forwarded

**[*8]** to designated place for filing, the limitations period commences when the return is received at the designated place for filing. See id.

Section 1.6031(a)-1(e)(1), Income Tax Regs., designates the proper place to file a Federal partnership income tax return. The designated place for filing is the "service center prescribed in the relevant IRS revenue procedure, publication, form, or instructions to the form".[8] The instructions for Form 1065 for 2001 state that the proper service center for filing was the Ogden, Utah, service center. Thus, Seaview did not submit a return to the proper place for filing when it faxed a copy to Agent Johnson in 2005 or when it sent a copy to respondent's counsel in 2007. Neither of the purported returns was forwarded to the Ogden service center. Additionally, there is a plethora of caselaw holding that a revenue agent is not a designated filing place. W.H. Hill Co. v. Commissioner, 64 F.2d 506 (6th Cir. 1933), aff'g 22 B.T.A. 1351 (1931) and 23 B.T.A. 605 (1931); Green v. Commissioner, T.C. Memo. 1993-152, 1993 Tax Ct. Memo LEXIS 154, at *20, aff'd, 33 F.3d 1378 (5th Cir. 1994); see Metals Ref., Ltd. v. Commissioner, T.C. Memo. 1993-115, 1993 Tax Ct. Memo LEXIS 113, at *20-*21.

---

[8]Taxpayers could also file through magnetic media. Sec. 1.6031(a)-1(e)(3), Income Tax Regs.

**[*9]**   With respect to Seaview's faxing of the return, petitioner maintains that the Internal Revenue Manual requires revenue agents to process delinquent returns that they receive.  In support, petitioner relies on <u>Dingman v. Commissioner</u>, T.C. Memo. 2011-116, 2011 Tax Ct. Memo LEXIS 112.  <u>Dingman</u> is inapplicable to the present case.  In <u>Dingman</u>, we held, in a unique factual situation, that a taxpayer filed his returns when his counsel provided delinquent returns to the IRS Criminal Investigation Division (CID).  <u>Id.</u> at *31-*43.  In sum, we held that in the precise situation in <u>Dingman</u>, the CID was an appropriate place to <u>hand-deliver</u> a return.  <u>Id.</u>  <u>Dingman</u> is applicable only to <u>hand-delivery</u> of returns arising under the facts present in that case.  In <u>Dingman</u> the taxpayer clearly intended that the returns submitted to the CID be delinquent returns with payments, and the IRS processed them as such and assessed the taxpayer's payments.  Those facts are not present in the instant case.  Indeed, petitioner continues to maintain that Seaview timely filed its 2001 return.  <u>Dingman</u> did not create a blanket rule that a taxpayer can file a return by whatever method he chooses; nor did it create an additional place for taxpayers to file returns beyond the places specifically designated in the Code or the regulations.

Seaview sent what purported to be copies of its return to places not designated in the Code or regulations.  Therefore, Seaview did not file its return

**[\*10]** when it faxed a purported copy to Agent Johnson, and it did not file its return when it mailed a purported copy to respondent's counsel.

II. <u>Whether the Forms 1065 Seaview Purported To File Constitute Returns</u>

Our conclusion that Seaview failed to file its return at the proper place for filing is enough to hold that respondent timely issued the FPAA. However, as an alternative ground we will also look at whether the documents Seaview submitted even constitute returns. A document must satisfy four elements to trigger the running of the period of limitations on assessment. The document must (1) contain sufficient data to calculate the taxpayer's liability, (2) purport to be a return, (3) be an honest and reasonable attempt to satisfy the requirements of the revenue laws, and (4) be executed under the penalties of perjury. <u>Beard v. Commissioner</u>, 82 T.C. 766, 777 (1984), <u>aff'd</u>, 793 F.2d 139 (6th Cir. 1986).

The relevant question in this case is whether the purported copy of the return Seaview either faxed to Agent Johnson in 2005 or mailed to respondent's counsel in 2007 purported to be a return. In <u>Friedman v. Commissioner</u>, T.C. Memo. 2001-207, 2001 Tax Ct. Memo LEXIS 240, at \*5, <u>aff'd</u>, 80 F. App'x 285 (3d Cir. 2003), a revenue agent requested from a taxpayer copies of his returns for 1989 and 1990. The revenue agent believed that the taxpayer filed returns for those years although the taxpayer had not. <u>Id.</u> at \*5-\*6. The taxpayer provided

[*11] copies of the returns to the revenue agent but did not tell him that he had failed to file the returns.  Id. at *6.  And the revenue agent received the returns thinking that they had already been filed.  Id.  We therefore held, in part, that the taxpayer had not intended his delivery of the documents to constitute the filing of returns.  Id. at *24.

The situation in the present case is similar.  When Seaview's accountant faxed a purported copy of the return to Agent Johnson in 2005, he enclosed a copy of  certified mail receipt purporting to show that the return had been previously filed in 2002.  Seaview's accountant thus led respondent to believe that the return had been previously filed in 2002.  Therefore, Seaview did not intend to file a return when it faxed a copy to Agent Johnson.

Seaview has the same problem with respect to the mailing of the purported copy of the return in 2007.  Seaview's attorney enclosed with the document a cover letter stating that the document was a "copy of its 2001 Form 1065".  This indicates that Seaview believed it had previously filed its return and, thus, Seaview did not intend to file a return when it mailed a copy to respondent's counsel.

**[*12]** In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.