**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-27

UNITED STATES TAX COURT

SUSAN KATHLEEN CUNNINGHAM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1389-09S.                    Filed April 1, 2013.

Susan Kathleen Cunningham, pro se.

<u>Timothy A. Froehle</u> and <u>Audra Dineen</u>, for respondent.

SUMMARY OPINION

DEAN, <u>Special Trial Judge</u>:   This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was filed.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any

other court, and this opinion shall not be treated as precedent for any other case.

Unless otherwise indicated, subsequent section references are to the Internal

Revenue Code in effect for the years at issue, and Rule references are to the Tax

Court Rules of Practice and Procedure.

Respondent issued a statutory notice of deficiency[1] to petitioner in which he

determined deficiencies and additions to tax as follows:

| Year | Deficiency | Additions to tax | | |
| --- | --- | --- | --- | --- |
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2002 | $17,708 | $3,984 | $4,427 | $591 |
| 2003 | 17,713 | 3,985 | 4,428 | 457 |
| 2004 | 17,132 | 3,854 | ([1]) | 490 |
| 2005 | 16,928 | 3,808 | ([1]) | 679 |
| 2006 | 16,683 | 3,753 | ([1]) | 789 |

[1]The amount for this year has yet to be determined.

Petitioner concedes the adjustments in the notice of deficiency for interest

income and "rents received" income from Comerica Bank reported on Schedules

E, Supplemental Income and Loss, for each of the years 2002 through 2006.

Petitioner concedes that she received and failed to report alimony of $24,000 in

each of the years 2002 through 2006, but the notices of deficiency do not adjust

this item and respondent has not asserted an increased deficiency. Petitioner

concedes that she had a short-term capital gain of $138 in 2003 and a long-term

[1]Respondent also issued a separate statutory notice of deficiency to petitioner for 2001, but that case at docket No. 21358-08S was dismissed for lack of jurisdiction.

capital gain of $17,754 in 2004; respondent made no adjustment for the long-term capital gain of $17,754 in 2004 and failed to assert an increased deficiency. Petitioner concedes that she failed to file returns for 2002 through 2006. The issues remaining for decision are whether for 2002 through 2006 petitioner is: (1) entitled to itemized deductions in excess of the standard deduction; (2) entitled to deductions reportable on Schedule C, Profit or Loss From Business; (3) entitled to deductions reportable on Schedule E; (4) liable for the addition to tax for failure to file timely Federal income tax returns without reasonable cause and due to willful neglect; (5) liable for the addition to tax for failure to pay timely the tax due without reasonable cause and due to willful neglect; and (6) liable for the addition to tax under section 6654(a) for failure to pay estimated income tax.

Some of the facts have been stipulated and are so found. The stipulation, the supplemental stipulation, and the second supplemental stipulation of facts and the exhibits received in evidence are incorporated herein by reference. Petitioner resided in California when the petition was filed.

## Background

Petitioner filed her Federal income tax return for 2001 in April 2006, reporting zero tax. Petitioner was issued a notice of deficiency for 2001 and petitioned the Court, which entered a dismissal for lack of jurisdiction because the

tax year was the subject of a prior notice and petition for which the Court determined there was no deficiency. Petitioner failed to file tax returns or pay any Federal income tax for 2002 through 2006. In July 2008 respondent prepared Forms 13496, IRC Section 6020(b) Certification, signed by his delegate identifying petitioner by name and taxpayer identification number, containing sufficient information from which to compute petitioner's tax liabilities and filed returns for petitioner for 2002 through 2006. Each of the section 6020(b) returns was for a single individual, included interest income and rental income, and allowed the standard deduction and a personal exemption. The 2003 return respondent prepared also included $138 of capital gain income.

Respondent issued the notice of deficiency for 2002 through 2006 on October 21, 2008. In June 2011 petitioner hand delivered to respondent's counsel professionally prepared Forms 1040, U.S. Individual Income Tax Return, for the years at issue. Petitioner claimed on the forms provided to respondent deductions on Schedules A, Itemized Deductions, and Schedules C and E for each year at issue. The Schedules C claimed deductions for a "consulting, marketing and promotions" activity under the name of "Access". The Schedules E reported income and expense deductions for one property, 14401 Big Basin Way, for 2002

through 2006 and for two other properties at 3936/3944 Peoria Road for 2002 through 2004.

Petitioner reported on the Forms 1040 zero taxable income for all the years at issue, 2002 through 2006.

It was not until the case was called for trial, however, that petitioner gave respondent copies of substantial documentation (documentation) attempting to evidence her entitlement to the deductions she had shown on the Forms 1040 submitted the previous year. The documentation is a collection of items, including copies of checks, receipts, and schedules with little organization or explanation. It was with difficulty that the Court analyzed the record. Unfortunately for petitioner, the record does not support the same results as the timely filing of petitioner's tax returns and the coherent, systematic, and timely production of substantiation of the items on the returns might have produced.

During the years at issue petitioner initially lived in Scottsdale, Arizona, in a home (Scottsdale home) she had purchased for her eventual retirement. The Scottsdale home purchase was financed with a first mortgage loan from Washington Mutual (WaMu) and a second mortgage loan from Steven Michael Miller, Trustee of the Steven Michael Miller 1997 Revocable Trust (Steven

Miller).[2]  Petitioner, however, spent so much time going back and forth to California to see her children that she decided to purchase a home in Paso Robles, California (Paso Robles home), in May 2003 for a total cost of $892,142.  The "Buyer Final Closing Statement" indicates that there was a first deed of trust evidencing a loan with Wells Fargo Home Mortgage of $615,300 and a second deed of trust for a loan with Wells Fargo Home Equity of $150,000.  Petitioner continued to hold the Scottsdale home as a second residence with the intent of selling it.  She began living in the Paso Robles home as her "main residence" in 2003.  Petitioner refinanced the Paso Robles home for $840,000 in September 2005 with Countrywide Home Loans and placed a second deed of trust on the house for a loan of $174,000 with Countrywide Home Loans in November 2005.  Petitioner also refinanced the Scottsdale home on December 8, 2006.

During the years at issue petitioner maintained a "business address" at 14407[3] Big Basin Way in Saratoga, California, but her mailing address for business and personal mail was in Cupertino, California.  Petitioner refinanced the

---

[2]Petitioner described Steven Miller as an "investor".

[3]The property at 14407 Big Basin Way was owned by petitioner's former husband, Dennis Cunningham.

property at 14401[4] Big Basin Way, obtaining three successive loans from Steven Miller in February 2002, May 2003, and September 2004. The first loan was for $550,000, the second for $225,000, and the third for $450,000. On May 18, 2005, petitioner filed a fictitious business name statement with the Santa Clara County Clerk Recorder's Office stating the address of the fictitious business name, Access, was 14510 Big Basin Way #290.[5] The statement indicates that petitioner began transacting business under the fictitious name in 1991 and that the statement is being refiled.

In April 2001 petitioner purchased properties at 3936/3944 Peoria Road in Springfield, Illinois, for $86,500, and this amount was financed by a loan with First Guaranty Mortgage Corp. On the Schedules E that petitioner provided to respondent properties B and C correspond to the addresses at 3936/3944 Peoria Road. Petitioner reported rents received from both properties in 2002, 2003, and 2004. The rent reported for property C in all three years represents payments petitioner made from her checking account in the name of "Access" to herself for "rental" of the property for storage of what she described as business

---

[4]Petitioner owned property at 14401 Big Basin Way.

[5]The record does not offer any evidence as to the ownership of property at 14510 Big Basin Way.

materials.  She deducted the "rental" payments on her Schedules C.  Petitioner was the only "tenant" in  property C.  Although petitioner testified that she had a tenant in property B, she provided no other evidence that the property at 3936 Peoria was actually rented during the relevant period.  In May 2004 petitioner sold the property at 3936/3944 Peoria Road for $107,500.

## Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule  142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).  In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a).  Petitioner did not argue or present evidence to show that she satisfied the requirements of section 7491(a).  Therefore, petitioner bears the burden of proof with respect to the issues in the notice of deficiency.

When a taxpayer fails to file a return, as did petitioner, it is as if she filed a return "showing a zero amount" for purposes of determining a deficiency.  Schiff v. United States, 919 F.2d 830, 832 (2d Cir. 1990); Roat v. Commissioner, 847 F.2d 1379, 1381 (9th Cir. 1988); sec. 301.6211-1(a), Proced. & Admin. Regs.

In determining the deficiencies, respondent allowed petitioner only the standard deduction because, in the absence of returns filed by petitioner, respondent had no evidence that there were any other deductions allowable to her. Implicit in the determination is the disallowance of any deductions other than the standard deduction. When petitioner subsequently submitted to respondent's counsel Forms 1040 for 2002 through 2006, she claimed for the first time itemized deductions and deductions for expenses on Schedules C and E.

Respondent's repeated requests for substantiation of items that petitioner belatedly claimed on the Forms 1040 submitted after the notice of deficiency was issued were consistent with respondent's original determination. It was, however, only at the call of the case from the trial calendar that petitioner appeared with a stack of copies of documents intended to substantiate the various expenses she had listed on the Schedules C and E for 2002 through 2006 that she had given to respondent six months previously.

Itemized Deductions

With the exception of matters pertaining to real estate, almost all of the documents were copies of checks, some bearing tiny, and occasionally elaborate, notations on their faces. Respondent raised objections to the checks. Respondent objects to the admission of the checks on the basis of "lack of foundation",

hearsay, and lack of authentication. The Court assumes that, if asked, petitioner would say that the documents are what they purport to be, checks that she wrote to pay her expenses. Checks are commercial paper and self-authenticating. Fed. R. Evid. 902. Checks are "verbal acts" and not hearsay statements. United States v. Pang, 362 F.3d 1187, 1192 (9th Cir. 2004). The Court overrules respondent's objections and admits the checks as evidence.

Medical and Dental Expenses

Petitioner deducted medical and dental expenses of $1,104 for 2002 but provided no substantiation. She is not entitled to a deduction for medical and dental expenses for 2002.

Taxes

Section 164(a) allows taxpayers to deduct taxes for the year within which paid, including State and local real estate, general sales,[6] personal property, and income taxes. Petitioner indicated on the Forms 1040 that she provided in 2011 that

---

[6]Taxpayers may, under sec. 164(b)(5), deduct for tax years beginning after December 2003 State and local sales taxes in lieu of State and local income taxes. American Jobs Creation Act of 2004, Pub. L. No. 108-357, sec. 501, 118 Stat. at 1520; Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, sec. 103, 120 Stat. at 2934. Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, sec. 201, 122 Stat. at 3864; Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, sec. 722, 124 Stat. at 3316; American Taxpayer Relief Act of 2012, Pub. L. No. 112-240, sec. 205, 126 Stat. at 2323.

she is entitled to deduct: for 2002 State and local income taxes of $7,094 and real estate taxes of $4,369; for 2003 State and local income taxes of $10,287 and real estate taxes of $9,777; for 2004 State and local general sales taxes of $828, personal property taxes of $3, and real estate taxes of $17,315; for 2005 State and local income taxes of $9,416 and real estate taxes of $8,741; and for 2006 State and local income taxes of $13,079 and real estate taxes of $13,894.

Petitioner provided copies of two checks payable to the County of Maricopa, Arizona Treasurer for 2002. The check dated March 1, 2002, is for $1,405.64, and the check dated October 1, 2002, is for $2,963.58. Small notations on the faces of the checks reference property taxes for the Scottsdale, Arizona, property for 2001 and 2002. The magnetic ink character recognition (MICR) numbers[7] match the amounts for which the checks were written.

Petitioner for 2003 introduced copies of two checks payable to the State of California Franchise Tax Board, one for $7,370.39 and one for $7,074.49, both dated July 8, 2003. A very small notation on the lower left face of each check indicates that the check for the larger amount is for the payment of income tax for 2000 and the smaller amount is for income tax for 2001. The MICR numbers at the

---

[7]See 12 U.S.C. sec. 5002(12) (2006); see also First Union Nat'l Bank v. Bank One, N.A., No. 01-CV-1204, 2002 WL 501145 (E.D. Pa. Mar. 20, 2002).

bottom right of the checks indicate that the checks were processed in the amounts for which they were written. Petitioner also provided checks showing the payment of property taxes for 2003 of $3,229.12 to Maricopa County and of $5,790.84 to the County of San Luis Obispo in 2003.

For 2004 petitioner introduced copies of checks to Maricopa County for 2004 property taxes of $3,355.70 and to the County of San Luis Obispo for 2003-04 property taxes of $3,799.40, delinquent 2002-03 property taxes of $313.14, and 2004-05 property taxes of $9,847.03. On the Form 1040 for 2004 that she provided to respondent she also deducted in lieu of State income tax $828 of general State sales tax.[8] The total amount of property taxes represented by the checks comports with the amount shown on the Form 1040 for 2004. On the basis of the adjusted gross income shown on petitioner's Form 1040 for 2004, she correctly reported the deduction for sales tax for her State of residence for that year. See IRS Pub. 600, Optional State Sales Tax Tables (2004). Any adjustment to this item will be computational and will be resolved by the Court's decision on the other issues.

Petitioner's check copies for 2005 included one to the County of San Luis Obispo for property taxes of $5,021.96 for 2005-06 and one to Maricopa County for

---

[8]See supra note 6.

property taxes of $3,718.84 for 2005. Petitioner did not substantiate the payment of any State and local income taxes for the year.

Petitioner's check copies for property taxes for 2006 are to the County of San Luis Obispo for $5,021.96 and $5,122.35 and to Maricopa County for $3,750.16. Petitioner did not substantiate the payment of any State and local income taxes for the year.

Petitioner is entitled to deduct real estate and State and local income taxes paid for 2002 through 2006 as described in the previous discussion.

Home Mortgage Interest

Section 163(a) allows a deduction for interest paid or accrued within the taxable year on indebtedness. Taxpayers other than corporations are not allowed to deduct "personal" interest. Sec. 163(h)(1). Individuals, however, are allowed a deduction for "qualified residence interest". Sec. 163(h)(3). A qualified residence is the taxpayer's primary residence and one other residence of the taxpayer. Sec. 163(h)(4)(A). Qualified residence interest includes interest on "acquisition indebtedness" or "home equity indebtedness". Acquisition indebtedness is debt, limited to $1 million, incurred to acquire, construct or substantially improve a qualified residence of the taxpayer that is secured by the qualified residence. Home equity indebtedness is certain indebtedness, not in excess of $100,000, secured by a

qualified residence. Sec. 163(h)(3)(C). Acquisition indebtedness also includes the refinancing of acquisition indebtedness. Sec. 163(h)(3)(B) (flush language). Debt is secured by a qualified residence if there is an instrument that in the event of default subjects the residence to satisfaction of the debt in the same way as would a mortgage or deed of trust. Sec. 1.163-10T(o)(1), Temporary Income Tax Regs., 52 Fed. Reg. 48417 (Dec. 22, 1987).

Home equity indebtedness is limited in amount to the fair market value of the qualified residence reduced by any "acquisition indebtedness" and may not exceed $100,000. Sec. 163(h)(3)(C). Respondent argues that petitioner has failed to provide adequate substantiation for her claimed mortgage interest expense deductions. For 2001, no longer at issue, petitioner presented a copy of a Form 1098, Mortgage Interest Statement, addressed to her from WaMu. The statement computed "total interest applied" for the year of $20,587.80 "less deferred interest - added to your principal balance" of $718.83 "plus payments applied to previously deferred interest" of $1,463.43 for a total mortgage interest received from payer of $21,332.40. The ending WaMu loan balance for 2001 is stated to be $262,633.70.

Petitioner also provided copies of adding machine tapes, an untitled payment schedule showing, among other items, total monthly payments of $2,010.51 and an

ending balance of $206,116.60, and copies of 12 monthly checks to Steven Miller

for $2,010.51. According to the adding machine tapes and the payment schedule,

apparently for the Steven Miller loan, petitioner paid interest of $23,242.89 in

2001.

For 2002 petitioner provided copies of checks to WaMu and Steven Miller

but no Form 1098 or any other home-mortgage-related documentation. The WaMu

checks show a monthly payment of $1,841.95, until the check dated July 1, 2002,

which was for $1,603.60. The checks for the remaining months of 2002 following

July are in varying amounts approximating $1,600. The untitled payment schedule

shows for 2002 monthly payments of $2,010.51 and an ending balance of

$205,128.88. The 12 monthly checks written to Steven Miller are all for $2,010.51.

All the MICR numbers match the amounts for which the checks are written.

Where a taxpayer has established that he has incurred an expense, failure to

prove the exact amount of the otherwise deductible item may not be fatal.

Generally, unless precluded by section 274, the Court may estimate the amount of

such an expense and allow the deduction to that extent. See Finley v.

Commissioner, 255 F.2d 128, 133 (10th Cir. 1958), aff'g 27 T.C. 413 (1956);

Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). Any inexactitude in

the estimate by the Court is of petitioner's own making due to her failure to maintain proper business records. See Cohan v. Commissioner, 39 F.2d at 544. In order for the Court to estimate the amount of an expense there must be some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, an allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

The Court, having examined the documents petitioner submitted as evidence of her home mortgage interest expense, concludes that she is entitled to deduct $30,000 as home mortgage interest for 2002.

For 2003 petitioner provided copies of checks to WaMu, Steven Miller, and Wells Fargo but no Form 1098 or any other home-mortgage-related documentation. The Court cannot determine accurately from the checks alone how much of petitioner's payments is for interest. Further complicating the Court's consideration of petitioner's claim of home mortgage interest expenses for 2003 through 2006 is the amount of the outstanding acquisition indebtedness.

The opening balance (the ending balance from 2001) for 2002 on the WaMu mortgage was $262,633.70, and the opening balance (the ending balance from 2002) on the mortgage to Steven Miller for 2003 was $205,128. Petitioner owed well over $400,000 in mortgage debt on the Scottsdale home in 2003 when she

incurred an additional $766,300 in mortgage debt to purchase the Paso Robles home.  Petitioner exceeded the $1 million limit on deductible acquisition indebtedness in 2003.  The problem was exacerbated in 2005 when she refinanced the Paso Robles home with an $840,000 loan followed closely by a $174,000 loan from Countrywide Home Loans.

Although petitioner has failed to keep appropriate records which would enable the Court to make an accurate determination of her home mortgage interest expenses for 2003 through 2006, there is some basis upon which an estimate may be made.  The Court, having examined the documents petitioner submitted as evidence of her home mortgage interest expenses for 2003 through 2006, concludes that she is entitled to home mortgage interest expense deductions of $35,000, $40,000, $38,000, and $35,000 for those years, respectively.  Any inexactitude in the estimate by the Court is of petitioner's own making because of her failure to maintain proper records.  See Cohan v. Commissioner, 39 F.2d 540.

Gifts to Charity

Taxpayers are allowed a deduction for any charitable contribution made within the year if verified under regulations prescribed by the Secretary.  Sec. 170(a).  Petitioner claimed deductions for charitable contributions of cash of $150 for 2002, $200 for 2003, $350 for 2004, $225 for 2005, and $175 for 2006 on the

Forms 1040 that she submitted to respondent in 2011. Charitable contributions of money may be verified by maintaining a canceled check for the contribution. Sec. 1.170A-13(a)(1), Income Tax Regs. Charitable contributions of more than $250 must be verified by a written acknowledgment of the of the contribution by the donee organization. Sec. 170(f)(8)(A).

Among the records petitioner provided are copies of three checks, each of which is written for $50 to Our Lady of Peace Church in 2002. The MICR numbers match the amounts for which the checks were written. Respondent's objection to the admission of the checks is overruled. Petitioner is entitled to a charitable contribution deduction of $150 for 2002. The Court can find no other substantiation for charitable contributions for any year, and petitioner is not entitled to deduct the amounts claimed for the other years at issue.

Claims of Schedule C and E Deductions

Deductions are strictly a matter of legislative grace, and a taxpayer bears the burden of proving entitlement to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934); Welch v. Helvering, 290 U.S. at 115. Moreover, taxpayers are required to maintain records that are sufficient to substantiate their deductions. Sec. 6001. Deductions are allowed under section 162 for the ordinary and necessary expenses of carrying on an activity that constitutes

the taxpayer's trade or business. Deductions are allowed under section 212(1) and (2) for expenses paid or incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

With respect to either section, however, the taxpayer must demonstrate a profit objective for the activity in order to deduct associated expenses. See Jasionowski v. Commissioner, 66 T.C. 312, 320-322 (1976); sec. 1.183-2(a), Income Tax Regs. The profit standards applicable for section 212 are the same as those used for section 162. See Agro Sci. Co. v. Commissioner, 934 F.2d 573, 576 (5th Cir. 1991), aff'g T.C. Memo. 1989-687; Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), aff'g 91 T.C. 686 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979); Rand v. Commissioner, 34 T.C. 1146, 1149 (1960).

Schedule C

Petitioner, however, must show not only that her primary purpose for engaging in the activity was for income or profit but also that she engaged in the activity with "continuity and regularity" in order to show that she was engaged in a trade or business during the years at issue. See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

Petitioner attached to the Forms 1040 that she gave respondent in 2011 Schedules C reporting a "Consulting, Marketing, Promotions" business named "Access". She claimed deductions for expenses resulting in net losses from her activity as Access for each of the years at issue. Included in the documents petitioner provided was an undated and untitled document stating that Access "provides business development services" that include designing marketing materials, event planning and scheduling, and attending trade shows. At the bottom of the document is the handwritten notation: "Prepared Prior To Business Collapse".

The parties also stipulated a copy of the fictitious business name statement for Access petitioner filed on May 18, 2005, with the Santa Clara County Clerk Recorder's Office. Petitioner showed that she maintained a checking account in the name of Access from which she wrote checks to various payees. Petitioner, however, has offered no other documentary or any detailed oral evidence that she conducted a trade or business, a profit-motivated activity engaged in with continuity and regularity, during the years at issue. Access had no employees; and though petitioner claimed expenses for advertising, she produced no evidence of any advertising. Petitioner offered no evidence of any Access work product or any correspondence between Access and a client. Petitioner produced no books of

account, client list, bank statement, or check register showing the receipt of any payment from a client, any invoice to a client, or any other evidence of any amount she ever received in payment from a client for her services as Access.

Because petitioner has not shown that she was engaged in a trade or business during any of the years at issue, she is not entitled to deduct any trade or business expenses on Schedule C.

Schedule E

Respondent does not dispute petitioner's profit objective with respect to the properties listed on Schedule E. In fact, the parties agree that petitioner received substantial rental income from Comerica Bank for the use of the property at 14401 Big Basin Way for the years at issue, $95,355 in 2002, $98,975 in 2003, $91,425 in 2004, $88,225 in 2005, and $88,225 in 2006. Petitioner's Schedules E report the income received from property A as the rental of 14401 Big Basin Way. For 2002 through 2004 petitioner reported on Schedules E net losses from properties B and C, 3936/3944 Peoria Road. Petitioner testified that she purchased the Peoria Road properties as "investment property".

Petitioner testified that in 2004 she had a tenant in property B, but she provided no other evidence that the property at 3936 Peoria was actually rented or held out for rental during the relevant period. The Court concludes that because

petitioner did not receive rental income for the year or show that she held the property for rental during the year, she incurred no rental expenses with respect to property B during 2002 through 2006.

Petitioner also testified that property C at 3944 Peoria was "rented" to Access throughout her ownership of the property, which ended in 2004. Petitioner alleges that she paid herself rent for using her own property. The "income" reported on Schedule E is the "rent" that she paid herself as Access. Petitioner, however, failed to show that Access was in fact a business during the years at issue. Petitioner also fails to have considered that under section 451, cash basis taxpayers include in income only the amounts "received" during the year and sections 162 and 212 limit the expenses that a cash basis taxpayer can deduct to those that are "paid" during the year. Petitioner neither paid nor received any amount involving property C; she possessed the relevant funds before the "transactions", and she possessed them after the transactions. There was no economic gain or loss. It is as if she moved money from one of her pockets to the other. Property C was not rented or held out for rental from 2002 through 2004, and petitioner neither received rental income nor incurred rental expenses with respect to the property.

The holding of property for rental purposes is generally treated as the use of property in a trade or business. Alvary v. United States, 302 F.2d 790, 796 (2d Cir. 1962); Mendes v. Commissioner, 121 T.C. 308, 317 (2003). The Court concludes from the record that while property A was property used in a trade or business, properties B and C were purchased and held for investment purposes.[9]

Petitioner claimed entitlement to a number of deductions for property A for all the years at issue and for properties B and C for 2002 through 2004. Most of petitioner's substantiation of claimed expenses is in the form of checks. The MICR numbers at the bottom right of the check copies indicate that the checks were processed in the amounts for which they were written.

### Advertising Expenses

Petitioner failed to point the Court to, and the Court was unable to find, any evidence of advertising expenses for 2002 and 2003, and she did not report any advertising expenses for 2004, 2005, and 2006.

### Auto and Travel Expenses

Petitioner failed to provide any evidence of automobile or travel expenses that meets the stringent substantiation requirements of section 274.

---

[9]Unlike expense deductions for rental property, any allowable expense deductions associated with investment properties B and C are itemized deductions subject to the 2% floor of sec. 67(a). See sec. 62(a)(4).

Cleaning and Maintenance

Petitioner points to copies of checks made out to Kevin Cunningham, her son, and to Terry W. Eckenfels "DBA Terry's Lawn Service" as evidence of cleaning and maintenance expenses for properties B and C. Petitioner changed the dates of several of the checks payable to her son in 2002 that bear notations indicating "landscape maintenance", and two of the checks with an October date indicate they were written for multiple months.

Generally, no deduction is allowed for personal, living, or family expenses. See sec. 262. Petitioner must show that any claimed expenses were incurred primarily for business or for investment rather than personal reasons. See Rule 142(a); Walliser v. Commissioner, 72 T.C. 433, 437 (1979); sec. 1.212-1(d) and (e), Income Tax Regs. To show that the expense was not personal, petitioner must show that the expense was incurred primarily to benefit her business or was for the production or collection of income or for the management, conservation or maintenance of property held for the production of income. There must also have been a proximate relationship between the claimed expense and the business or the section 212 activity. See Walliser v. Commissioner, 72 T.C. at 437; sec. 1.212-1(d). Petitioner's checks to her son for 2002 through 2004 do not meet this standard.

The Court concludes that four checks dated in 2003 each written for $125 to Terry W. Eckenfels "DBA Terry's Lawn Service" (noted to be for properties B and C) , a 2003 check to Tom's Plumbing and Heating (noted to be for furnace repair at property B), and a 2004 check for $297.22 written to "Avenue Glass and Repair Shop Inc." (noted to be for property B) are adequate substantiation of cleaning and maintenance expenses.

Insurance

Petitioner produced copies of two 2002 checks to State Farm Insurance  Co., one for $230 for property B and one for $327 for property C.  She provided copies of two checks for 2003 to State Farm, one for $282 and one for $401.  She also provided two checks showing payments to State Farm in 2004, one for $363 for property B and one for $500 for property C.  The Court can find no evidence of insurance payments with respect to property A for any year.  Petitioner is entitled to insurance expense deductions for amounts shown on the previously discussed checks.

Mortgage Interest

Petitioner claimed deductions on the Schedules E for relatively modest amounts of mortgage interest expenses.  She claimed for property A $2,302 for 2002, $1,478 for 2003, $2,230 for 2004, $2,687 for 2005, and $2,687 for 2006.

Petitioner, however, offered as evidence to prove her entitlement to mortgage interest expense deductions for property A copies of settlement documents showing the details of financing from Steven Miller, copies of notated checks to Steven Miller, and copies of Steven Miller payment books[10] she maintained showing the dates of payment, the total amount paid, the amount of interest paid, and the outstanding balance due for amounts much larger than those she claimed.  The Steven Miller payment books bear the legend "BENEFICIARY: Please initial each payment and return book."  There are initials following each payment entry.  The settlement documents for the three refinancing events for property A during the years at issue show that the loans were each independent of the other and used by petitioner to obtain cash.

Petitioner proffered check copies for the February 2002 loan of $550,000 from Steven Miller showing, with a few exceptions, monthly payments during the period at issue beginning in April 2002.  Petitioner presented copies of nine checks to Steven Miller in 2002 for $4,927.08 bearing notations indicating they were for the February 2002 loan.  The payment book associated with the loan indicates the interest rate to be 10.75% per annum (.1075 x $550,000 / 12 = $4,927.08).  Judging

_____

[10]The Court overrules respondent's objections to the payment books.  See Rule 174(b); Fed. R. Evid. 803(6); Keogh v. Commissioner, 713 F.2d 496, 500 (9th Cir. 1983), aff'g Davies v. Commissioner, T.C. Memo. 1981-438.

by the payment book the loan was an interest-only loan; the principal was not amortized, and all payments went to interest. Petitioner paid interest of $44,343.72 in 2002 on the $550,000 loan from Steven Miller. Petitioner made 12 monthly payments of $4,927.08 in each of the years 2003, 2004, 2005 and 2006, $59,124.96 a year in interest.[11]

Petitioner provided similar evidence with respect to the May 2003 loan from Steven Miller of $225,000 at a rate of 12%. The evidence indicates monthly payments of $2,250, applied to interest only from July 2003 through August 2004. Petitioner incurred interest expenses of $13,500 in 2003 and $18,000 in 2004 due to the May 2003 loan. Similarly, petitioner's evidence shows monthly payments of $4,031.25 on the Steven Miller loan in September 2004 of $450,000 at 10.75%. Petitioner made three payments in 2004 for a total of $12,093 and twelve payments in 2005 and 2006 totaling $48,372 for each year.

The Court has analyzed the evidence and finds the relevant dates and amounts to be internally consistent and consistent with the surrounding facts and circumstances. Petitioner is entitled to Schedule E interest deductions for property

---

[11]The payment book indicates that the payments continued through September 2007.

A of $44,343.72 for 2002, $72,624.96 for 2003, $89,217.96 for 2004, $107,496.96 for 2005, and $107,496.96 for 2006.

If a taxpayer is an individual, however, the "passive activity loss" for the taxable year shall not be allowed. Sec. 469(a). The term "passive activity loss" means the amount by which "the aggregate losses from all passive activities" exceeds "the aggregate income from all passive activities" for the taxable year. Sec. 469(d)(1). For purposes of section 469(a), "passive activities" are, with certain exceptions, activities involving a trade or business in which the taxpayer does not "materially participate". Sec. 469(c)(1). The term "passive activity" generally includes any rental activity. Sec. 469(c)(2). Rental activity is any activity "where payments are principally for the use of tangible property." Sec. 469(j)(8). Petitioner has not shown that her property A rental activity is excepted from treatment as a passive activity.

Petitioner's passive activity losses exceed her aggregate income from all passive activities for the years 2005 and 2006; rental income of $88,225 less interest expenses of $107,496.96 generates a passive loss of $19,271.96 for both years.[12] Section 469(i) provides an exception to the general rule that passive activity losses

---

[12]Other expenses petitioner claimed with respect to property A are affected by sec. 469(a) to the extent the aggregate losses exceed aggregate income.

are disallowed. A taxpayer who "actively [participates]" in a rental real estate activity can take advantage of an offset, a deduction of a maximum loss of $25,000 per year, as an exception to the disallowance of passive activity losses. Sec. 469(i)(1) and (2). But petitioner has not demonstrated that she actively participated in the rental activity and therefore cannot qualify for the offset.[13] See Madler v. Commissioner, T.C. Memo. 1998-112.

Petitioner also claimed deductions for interest expenses associated with the Schedule E properties B and C at 3936/3944 Peoria Road that First Guaranty Mortgage Corp. financed. The Court has found that those properties were held for investment. In the case of a taxpayer other than a corporation, interest deductions may not exceed the taxpayer's net investment income for the taxable year. Sec. 163(d)(1). The Court has found that petitioner had no investment income from renting the properties.

The term "investment income" can include the net gain from the disposition of investment property, and petitioner experienced such a gain upon the disposition of the Peoria Road properties in 2004. See sec.163(d)(4)(B)(iii). Petitioner's evidence of her interest expenses for properties B and C, however, is meager. The

---

[13]Losses disallowed under sec. 469(a) may be carried to the next year. Sec. 469(b).

evidence consists of copies of settlement documents showing the purchase in April 2001 of the Peoria Road properties First Guaranty Mortgage Corp. financed and copies of checks drawn in favor of City Mortgage Inc., beginning in March 2002. The checks bear the notation: "Loan Originating Lender First Guaranty Mortgage Corporation". Petitioner failed to explain why there were payments to an institution other than the one that financed the purchase. Petitioner also failed to provide any substantiation of how much interest she was paying. In order for the Court to estimate the amount of an expense there must be some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. at 742-743. Without such a basis, an allowance would amount to unguided largesse. Williams, 245 F.2d at 560. The Court finds that petitioner has not provided sufficient evidence from which to make an estimate of her interest expenses associated with the Peoria Road properties.

Supplies Expenses

The Court could find no substantiation of expenses for supplies that could be identified as being associated with properties A, B, or C.

Taxes

Petitioner's 2002 Form 1040 as submitted to respondent claims a deduction for taxes for property A of $6,121. She has provided copies of checks to the

County of Santa Clara Tax Collector (Santa Clara County) dated in 2002 that total $6,121.16. Petitioner has a copy of a 2003 check to Santa Clara County for $4,322.94, having claimed a deduction for taxes of $4,323 for property A for 2003. Petitioner for 2004 has provided for property A a copy of a check to Santa Clara County for $4,400.98, having claimed a deduction for taxes paid of $4,401. Petitioner's checks substantiate taxes paid to Santa Clara County of $2,343.29 in 2005 and $6,973.17 ($2,343.29 and $4,629.88) in 2006.

Petitioner claimed a deduction of $1,042 for taxes in 2002 for each of properties B and C. She submitted a copy of a 2002 check to the Township of Springfield, Illinois Tax Collector (Town of Springfield) for $1,042 with a notation that the payment was for both properties B and C. Although she claimed this amount once for each of properties B and C as taxes paid, petitioner has a copy of one 2003 check to the Town of Springfield, Illinois Tax Collector for $1,062.72 for both properties. Petitioner provided no substantiation for any 2004 taxes paid on properties B and C and is therefore not entitled to deduct expenses for taxes associated with the properties for 2004.

Petitioner is entitled to deduct the taxes associated with properties A, B, and C for which she provided checks to substantiate her payments as discussed above.

Utilities

Petitioner claimed deductions for utilities expenses on Schedules E of her Forms 1040 for property A for 2002 and 2003 and for property B for 2002, 2003, and 2004. She substantiated utilities expenses only for property B, $1,058 for utilities expenses in 2002, $737 for 2003, and $453.83 for 2004 as claimed on the Forms 1040. She is entitled to deduct substantiated utilities expenses.

Bank Service Charges

Petitioner claimed a deduction for "Bank Service Charges" for properties A, B, and C but failed to offer sufficient evidence to substantiate the item for any year or property.

Depreciation

The Court finds that petitioner is entitled to depreciation deductions for property A for 2002 through 2006 and for properties B and C for 2002 through 2004 as determined by the computations of the parties.

Additions to Tax Under Section 6651(a)(1) and (2)

Section 7491(c) imposes on the Commissioner the burden of production in any court proceeding with respect to the liability of any individual for penalties and additions to tax. Higbee v. Commissioner, 116 T.C. 438, 446 (2001); Trowbridge v. Commissioner, T.C. Memo. 2003-164, aff'd, 378 F.3d 432 (5th Cir. 2004). In

order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or the addition to tax is appropriate. Higbee v. Commissioner, 116 T.C. at 446.

Section 6651(a)(1) provides for an addition to tax of 5% of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, not to exceed 25%. The addition to tax for failure to file a timely return will be imposed if a return is not timely filed, unless the taxpayer shows that the delay was due to reasonable cause and not willful neglect. See sec. 6651(a)(1). The section 6651(a)(1) addition to tax is reduced by the amount of the section 6651(a)(2) addition to tax for any month (or fraction thereof) to which an addition to tax applies under section 6651(a)(1) and (2). See sec. 6651(c)(1).

Section 6651(a)(2) provides for an addition to tax of 0.5% per month up to 25% for failure to pay timely the amount shown on a return unless it is shown that the failure is due to reasonable cause and not due to willful neglect.

Petitioner submitted by hand Forms 1040 to respondent's counsel three years after the issuance of the notice of deficiency, an action that may not qualify as the "filing" of the returns. See Allnutt v. Commissioner, 523 F.3d 406, 412-413 (4th Cir. 2008), aff'g T.C. Memo. 2002-311. But cf. Dingman v. Commissioner, T.C. Memo. 2011-116 (2004 amendments to section 1.6091-2 (d)(1), Income Tax Regs.

may have changed what constitutes filing by hand). Petitioner, however conceded that she failed to file Federal income tax returns or to pay any income tax.[14] In any event, respondent has met his burden of production under section 7491(c) with respect to imposing the addition to tax under section 6651(a)(1) and (2).

It is petitioner's burden to prove that she had reasonable cause and lacked willful neglect in not filing or paying timely. See United States v. Boyle, 469 U.S. 241, 245 (1985); Higbee v. Commissioner, 116 T.C. 438; sec. 301.6651-1(a)(2), Proced. & Admin. Regs. Petitioner testified that she did not file or pay timely because she "didn't owe any tax" on the basis of her "running log" in "her head", and "then life took a turn for the worse". The mistaken belief on the part of a taxpayer that no return was required under the statute does not constitute reasonable cause for noncompliance. Shomaker v. Commissioner, 38 T.C. 192, 202 (1962).

To prove reasonable cause for a failure to pay her tax liability, the taxpayer must show that she exercised ordinary business care and prudence in providing for

---

[14]Respondent prepared returns for petitioner meeting the requirements of sec. 6020(b). See sec. 301.6020-1(b)(2), Proced. & Admin. Regs. The returns made by respondent under sec. 6020(b) are to be disregarded for purposes of sec. 6651(a)(1) but treated as returns filed by petitioner for purposes of sec. 6651(a)(2). Sec. 6651(g).

payment of her tax liability and nevertheless was either unable to pay the tax or would suffer undue hardship if she paid the tax on the due date. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Although the Court believes that petitioner is presently in financial difficulty, she lived far beyond her means during the years at issue. She purchased a second residence, a rental property, and two investment properties during the years at issue. A taxpayer who makes lavish or extravagant purchases so that her assets and income will be insufficient to pay her taxes has not exercised ordinary business care and prudence in providing for the payment of her tax liability. Id.

Because petitioner failed to offer any evidence of reasonable cause and lack of willful neglect for her failure to file or pay timely, respondent's determination that she is liable for the additions to tax under section 6651(a)(1) and (2) is sustained.

Section 6654(a) Addition to Tax

Section 6654 imposes an addition to tax for failure to make timely and sufficient payments for estimated taxes. In order for respondent to satisfy his burden of production under section 7491(c), he must produce evidence necessary to enable the Court to conclude that petitioner had an obligation to make estimated tax payments for 2002 through 2006. See Wheeler v. Commissioner, 127 T.C. 200,

211 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008). Specifically, respondent must produce evidence showing that petitioner had a "required annual payment" as defined by section 6654(d)(1)(B) for 2002 through 2006. See id.

The section 6654 addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability. Sec. 6654(c)(1). Each required installment of estimated tax is equal to 25% of the "required annual payment". Sec. 6654(d)(1)(A).

Under section 6654(d)(1)(B), "required annual payment" means the lesser of:

> (i) 90 percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year), or

> (ii) 100 percent of the tax shown on the return of the individual for the preceding taxable year.

> Clause (ii) shall not apply if the preceding taxable year was not a taxable year of 12 months or if the individual did not file a return for such preceding taxable year.

Petitioner filed a return for 2001, and the Court has sufficient evidence to make a determination with respect to 2002 under section 6654(d)(1)(B)(i). Because petitioner had no tax liability for 2001, no addition to tax for failure to make estimated income tax payments may be imposed on her for 2002. See sec. 6654(e)(2).

Petitioner failed to file a return for 2002, 2003, 2004, 2005, or 2006.[15] The evidence is again sufficient for the Court to make the analysis required by section 6654(d)(1)(B)(i). Because of petitioner's failure to file in the relevant years, her required annual payment for 2003 through 2006 was 90% of the tax due for each of those years. <u>See</u> sec. 6654(d)(1)(B)(i).

Petitioner for each of the years 2003 through 2006 failed to make a required annual payment equal to 90% of the tax due. Accordingly, petitioner is liable for the addition to tax under section 6654 for 2003, 2004, 2005, and 2006.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[15]Even if petitioner "filed" the returns she submitted to respondent's counsel in 2011 and the Court ignores her concession that she failed to file returns, the returns will be disregarded for purposes of sec. 6654(d)(1)(B)(i). <u>See</u> <u>Mendes v. Commissioner</u>, 121 T.C. 308, 325 (2003).